## STATE v. EVANS.

No. 4752.   Decided July 13, 1929.   (279 P. 950.)

*F. W. James,* of Salt Lake City, for appellant.

*George P. Parker,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

GEORGE CHRISTENSEN, District Judge.

The appellant, Henry Latham Evans, was charged jointly with C. H. Berry with the crime of second degree burglary, but was tried separately. He was convicted of burglary in the third degree, and was thereafter sentenced to serve an indeterminate term in the state prison. He appeals and assigns as errors (1) the refusal of the court to give certain requested instructions submitted by defendant; (2) the giving by the court of certain instructions to the jury; (3) the granting by the court of the state's motion to strike certain evidence given by the defendant; and (4) that the evidence is insufficient to support the conviction.

The evidence of the state disclosed that one J. B. Whitehill, who resides on First avenue, Salt Lake City, returned to his residence on the day in question, October 27, 1927, just after sunset. When he entered the house, he heard a noise down in the basement, and found the basement lights on. He had his wife bring his revolver, and they ordered the persons to come out. The defendant Berry came first, and then the appellant, Evans. Thereupon Mr. Berry said

they had been double-crossed, and requested Mr. Whitehill to call Dr. Smart, and not to call the officers, saying in effect, "There is some mistake here, and if you get the officers we will all be in trouble." After some delay, and after the appellant had said, "Call the police," the officers were called. There were at this time two kegs of intoxicating liquor on the steps leading to the basement. Mr. Whitehill testified that they had silverware, dishes, camping outfit, tools, etc., in the basement; also that he had 32 gallons of whisky in the basement at the time, from which the two kegs on the steps had been taken. When the officers arrived, they found the appellant and the defendant Berry standing at the bottom of the stairway, covered by Mr. Whitehill with his pistol. The appellant, on the way to the police station, said to the officers: "My God, I am glad you fellows came. That guy would have shot us: he was trembling so, I was afraid his gun would go off." Appellant had a common pass key on him. The two kegs of whisky had been taken from a storeroom in the basement. The storeroom had been jimmied open.

The appellant, testifying in his own behalf, stated that he was 45 years of age and has a family; that some time prior to October 27, 1927, a man by the name of Arbuckle approached him about buying some liquor. Appellant told Arbuckle he had no money to buy whisky with. Some days later Arbuckle and a negro met appellant, and told him he could buy the liquor for $10 a gallon, and still later offered it for $8 per gallon, provided 10 gallons were purchased. On October 27, 1927, appellant and defendant Berry arranged with Arbuckle to take 10 gallons. Berry rode with Arbuckle to the Whitehill home, and appellant came by way of street car. When appellant arrived, Arbuckle took them down into the basement, and Arbuckle took two kegs of whisky out of a little storeroom in the basement and put them on the steps, and appellant gave Arbuckle $40. They waited around for the negro to appear, and then Arbuckle went to find him. While waiting for Arbuckle's return, Mr. White-

hill came home. When Mr. Whitehill called them a couple of thieves, appellant told him to call the officers. Arbuckle works for Hemstreet Furniture Company and lives in Salt Lake City. Appellant had known him for two years. Appellant was not in the bootlegging business, but got the whisky for his folks, because liquor of that kind is hard to get. The door on the back porch was open when appellant came to the house, and so also was the storeroom. After this trouble, Arbuckle returned the money to appellant; told the officers that they went up to get some liquor. Two witnesses testified as to the good character of appellant.

We shall discuss the assignments of error in the reverse order; i. e., commencing with assignment No. 15, that the evidence is insufficient to support the conviction.

If the jury believed the state's evidence, and did not find that the explanation of the presence of appellant and his associate in the home and basement of another, with property partly removed from its place of storage, was satisfactory or reasonable, it might well be satisfied of the appellant's guilt beyond a reasonable doubt, and justified in finding a verdict against him. It is not for this court to weigh the evidence, nor to say what quantum shall be necessary to prove guilt beyond a reasonable doubt. As we view the evidence, this court is not prepared to say, as a matter of law, that the final conclusion of the jury was wrong. If in the last analysis the jury believed the evidence introduced by the state, and did not give credence to the appellant's version, it was ample to warrant its finding.

Assignment No. 14, relating to the order of the court striking certain evidence of the appellant, is not discussed in apellant's brief, and we find upon examination that this assignment of error is without merit.

The appellant complains of the court's instruction No. 9, respecting the evidence of previous good character. It appears to this court, however, that the instruction given by the trial court fully covered the subject and amply safeguarded the appellant's interests.

Appellant strenuously contends that instruction No. 12, as given by the court, wherein the following words occur, "nor are you bound to believe any witness," is objectionable and prejudicial. The writer has carefully examined authorities cited in appellant's brief on this point, and reached the conclusion that those authorities do not sustain the contention of appellant that instruction No. 12 is erroneous and highly prejudicial to appellant. In connection with the other instructions of the court, with which this instruction must be considered and construed, there can be no doubt of the court's right to so instruct the jury. This court has repeatedly sustained instructions of the same or a similar import.

Assignments of error No. 4 and No. 8 deal with the question of property rights in intoxicating liquor, and contend that the court should have given appellant's requested instructions No. 4 and No. 8.

Comp. Laws Utah 1917, § 3366, provides:

"There shall be no property rights whatsoever in any liquors, vessels, appliances, fixtures, bars, furniture, and implements kept or used for the purpose of violating, or used in violation of, any provision of this title."

It is the contention of appellant that under this section intoxicating liquor cannot be the subject of larceny. There are divergent views expressed by the authorities in relation to whether or not intoxicating liquor is the subject of larceny, but we think that the better view is expressed by the Criminal Court of Appeals of Oklahoma in *Arner* v. *State*, 19 Okl. Cr. 23, 197 P. 710, 711. thus:

"Therefore, it is contended that because the prosecuting witness had no property rights of any kind in the whisky of which he was possessed for the purpose of violating the prohibitory liquor laws, no property was taken from him, and therefore all the essential elements of the crime of robbery were not present in the taking of this whisky under the circumstances disclosed by the evidence.

"We cannot agree with this contention. Section 3620, Revised Laws 1910, supra, does not have the effect of altering or changing the

inherent character or nature of whisky as personal property. An entire consideration of the prohibitory liquor laws of this state discloses that the intent of the Legislature was to provide that intoxicating liquors possessed by a person for the purpose of violating any of the provisions of the prohibitory liquor laws should be contraband property as between the state, its officers, and such person; that a person unlawfully possessed of intoxicating liquors, etc., could not claim to have property rights in such articles in a proceeding brought by the state to confiscate them; nor that the articles and things condemned, when unlawfully kept or used, were not property."

Also in *State* v. *May*, 20 Iowa, 305, the Iowa Supreme Court said:

"We admit the force of this reasoning, yet plausible as it seems in our judgment, it will not stand the test of scrutiny of principle or of ethics. If sound, then one offense will stand as a justification for the commission of another.

"Larceny is a distinct crime from keeping liquors for sale contrary to the provisions of the statute; both, to be sure, are violations of law, but each has its own specific and appropriate penalty, and each must be dealt with by itself.

"Although liquor as an article of traffic is prohibited, and is liable when kept as such, to be seized and destroyed, nevertheless, until this is done, it is in its essential nature property."

And then, further, the Utah statute provides (Comp. Laws 1917, § 3358):

" * * * That if some of such property, except liquors, can be used for lawful purposes, and in the discretion of the court the public interest would be served by selling instead of destroying same, then the court shall direct the officer to sell such property at public auction to the highest bidder," etc.

The evidence also disclosed that there were other articles of personal property in the basement owned by Mr. Whitehill. The appellant must fail on this assignment.

Assignment of error No. 11 is without merit. The court's instruction No. 8 sufficiently directed the jury, and was as favorable to the appellant as he was entitled to have it in the light of the evidence.

We now reach the most serious of appellant's assignments of error. Assignments Nos. 1, 2, 3, 5, 6, and 7 deal with the following requested instructions by the appellant, covering his theory of defense:

(1) "You are further instructed that if this defendant at the time of entering the said residence honestly believed that he had a right to the said property, even though he did not have a right, your verdict should be not guilty."

(2) "You are further instructed that the state must prove to your satisfaction, beyond a reasonable doubt, that the defendant here did not buy said liquor, and did not believe, at the time he entered said house, that he had a right to do so."

(3) "You are further instructed that if there is a reasonable doubt in your minds as to whether or not the defendant believed he had a right to enter said residence, you should find the defendant not guilty."

(5) "You are further instructed that before you should bring in a verdict of guilty, the state must prove to your satisfaction, beyond a reasonable doubt, that the defendant, when he entered the said premises, had the intent to commit larceny; and you are further instructed that a person does not intend to commit larceny if they believed that they had a right to take the said property, even though they do not have such a right. Therefore, if you believe from the evidence that at the time this defendant entered the said house, he believed he had a right to take the said liquor, or that there is a doubt in your mind as to whether or not he had this belief, your verdict should be not guilty."

(6) "You are further instructed that to constitute burglary there must be a felonious intent at the time of the entering of the building, and the burden is upon the state to prove this intent beyond a reasonable doubt, and the court instructs you that if the defendant believed that he had a right to enter the said premises, there is no criminal or felonious intent, and therefore, your verdict should be not guilty."

(7) "You are further instructed that if the defendant believed that one Arbuckle had a right to enter said premises, and had authority to give this defendant permission to enter said premises, this would negative any criminal intent on the part of this defendant, and your verdict should be not guilty."

The court gave only one instruction covering this matter, viz. instruction No. 10:

"You are further instructed that if this defendant at the time of entering said residence honestly believed that he had a right to the

property he intended to take, even though as a matter of fact he did not have such a right, then, under such circumstances, he is not guilty of the offense charged in the information."

The prosecution being for burglary, the intent with which the appellant entered the home of Mr. Whitehill on October 27, 1927, becomes the crux of the case. The appellant maintains his defense upon the theory that he believed he had a right to enter the premises upon said occasion, and that when he so entered he entertained no thought or intent to steal any goods or chattels therein. The court's instruction No. 10 does not properly reflect the appellant's theory. It deals only with the appellant's belief that he had a right to the property he intended to take when he entered. The testimony of the defense, and that is the only testimony on that point, is to the effect that the deal was consummated after the parties had entered the basement, when the two kegs were taken from the storeroom and the money paid over to Arbuckle. The jury may well have felt that the appellant had, at the time of his entry into the building, no grounds to honestly believe he had a right to the property he intended to take, when he at that time had neither seen the property nor paid for it. And the jury may also have taken the view that no one has a right to the possession of intoxicating liquor, and thus have been misled by instruction No. 10, although the court, in giving such instruction, substantially complied with appellant's request No. 1. Request No. 1 covered only one phase of the matter, and the writer is of the opinion that the trial court should have given appellant's requested instruction No. 3.

The court's instruction No. 5, subdivision (c), is merely a general statement of one of the elements of the offense charged, and does not specifically and definitely state the appellant's theory of defense. The appellant was entitled to have his theory, that when he entered the house he believed he had a right to do so, go to the jury in the form of a proper instruction from the court, properly reflecting ap-

pellant's theory upon this, the essential fact, whether or not the appellant believed he had a right to enter, which the jury must find before it could render a verdict.

The instructions given by the court did not properly and fully inform the jury upon the law on this point. The appellant made a proper request in submitting requested instruction No. 3, and it was the duty of the court to have given this request, or its substance, to the jury. The failure of the trial court to do so was prejudicial error.

It therefore follows that the judgment appealed from should be reversed. It is so ordered.

This cause is remanded to the court below, with directions to grant a new trial.

STRAUP, J. I concur. I, however, am of the opinion that the appellant was also entitled to the substance of his requests 5 and 6, and that it was not given.

ELIAS J. HANSEN, J., concurs.

CHERRY, C. J. (dissenting). I dissent from the conclusion and order that the judgment be reversed. The essentials of the burglary charged were that the defendant entered the house described with intent to commit larceny therein. To show an entry with such intent would make a complete case under the statute. The statute contains no words qualifying the character or nature of the entry, except that it must be made with a certain intent. No other question of the lawfulness of the entry is involved. It is held in California that it is immaterial that the act of entering is not of itself a trespass. *People* v. *Brittain*, 142 Cal. 8, 75 P. 314, 100 Am. St. Rep. 95.

But here the only claim made was that the entry was innocent, because the accused believed he had a right to take the whisky. The court by instruction No. 10 expressly directed the jury that, if such was the case, the accused was not guilty. The accused admitted entering the basement to

get the whisky, and made no other claim to justify his entry. The only question, therefore, was whether he entered with intent to steal the whisky or to purchase it. The instructions given fully covered this subject, which was the only real question of fact in the case. Under the evidence the jury was bound to find that the entry was with felonious intent or not, according to what they concluded was the belief of the accused respecting his right to the whisky. Beyond this there was no question of the lawfulness of the entry. The instructions given very clearly submitted the case upon the theory of the accused, and the judgment should be affirmed.

FOLLAND, J. I concur in the views expressed by Mr. Chief Justice CHERRY.

EPHRAIM HANSON, J., being disqualified, did not participate herein.