2012 UT 27

**STATE of Utah, Plaintiff and Petitioner,**

v.

**James Norman ALEXANDER, Defendant and Respondent.**

No. 20090829.

Supreme Court of Utah.

May 4, 2012.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for petitioner.

Linda M. Jones, Michael R. Sikora, Salt Lake City, for respondent.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In this case, we consider the showing required for a defendant to withdraw a guilty plea under the current version of section 77–13–6 of the Utah Code (Plea Withdrawal Statute or Statute) [2] and rule 11 of the Utah Rules of Criminal Procedure.

¶ 2 In 2007, James Alexander pled guilty to burglary with intent to commit sexual battery. Prior to his sentencing, Mr. Alexander filed a timely motion to withdraw his guilty plea. In that motion, he argued that when the district court accepted his guilty plea, it failed to apprise him of the elements of sexual battery, as required by rule 11. In addition, he alleged that he was never otherwise informed of the elements of sexual battery, and his plea was therefore not knowingly and voluntarily made. The district court denied Mr. Alexander's motion and sentenced him to a prison term of one to fifteen years.

¶ 3 On appeal, the Utah Court of Appeals reversed the district court's decision, concluding that the district court did not comply with rule 11(e)(4)(A) at the plea hearing because it did not inform Mr. Alexander of the elements of sexual battery, which was the specific intent crime underlying the burglary charge. The court of appeals assumed that the violation of rule 11 automatically rendered the plea unknowing and involuntary. Thus, it held that Mr. Alexander was entitled to withdraw his guilty plea.

**2.** The Plea Withdrawal Statute provides that a plea may be withdrawn only upon a showing that it "was not knowingly and voluntarily made." UTAH CODE § 77–13–6(2)(a).

¶ 4 We granted certiorari to resolve three issues: (1) "whether the court of appeals erred in its evaluation of the case in relation to the record and the standard for a knowing and voluntary plea," (2) whether the court of appeals erred in declining to require a showing of prejudice before holding that a defendant may withdraw a guilty plea,[3] and (3) whether the court of appeals' decision in this case conflicts with our prior holding in *Hurst v. Cook.*[4]

¶ 5 A majority of the court agrees on the following. First, three members of this court hold that, although the court of appeals erred in limiting its review to whether the district court had complied with rule 11 during the plea hearing, the record nonetheless demonstrates that Mr. Alexander's plea was not knowingly and voluntarily made. Second, three members of this court hold that the court of appeals did not err in declining to require a showing of prejudice because such a showing is not required by rule 11(*l* ). Finally, the court unanimously holds that, because this case involves a different issue than the one addressed in our holding in *Hurst*, the two cases do not conflict. Based on these conclusions, we affirm the court of appeals' decision to allow Mr. Alexander to withdraw his guilty plea.

### BACKGROUND

¶ 6 In 2007, Mr. Alexander was charged with rape, a first degree felony, and forcible sexual abuse, a second degree felony. At the preliminary hearing on these charges, the alleged victim testified that on January 29, 2006, Mr. Alexander phoned her and said he wanted to come to her house and have sex with her. She stated that she had told Mr. Alexander he could come to her home, but she would not have sex with him. When Mr. Alexander arrived, he began "talking about sexual acts" and she again stated that she did not want to have sex with him. Mr. Alexander nonetheless began to hug and kiss her. He grabbed her arms and breasts and touched her vagina. She testified that she "pulled away" from Mr. Alexander and told him to "back off" and "get the hell off [her]." She stated that Mr. Alexander then pushed her down on the bed, climbed on top of her and forced her to have sexual intercourse without her consent. Although he did not testify at the preliminary hearing, Mr. Alexander denied the allegations and pled not guilty to the charges.

¶ 7 Sometime after the preliminary hearing, Mr. Alexander and the State entered into plea negotiations. Mr. Alexander subsequently agreed to plead guilty to an amended charge of burglary[5] with the intent to commit sexual battery,[6] a second degree felony. The amended charging documents described the burglary charge as follows:

[O]n or about January 29, 2006, in violation of Title 76 Chapter 6, Section 202, Utah Code Annotated 1953, as amended, . . . the defendant, James N. Alexander, a party to the offense, entered or remained unlawfully in the dwelling of [the alleged victim] with the intent to commit a sexual battery.

¶ 8 At the same time that the State filed the amended charging documents, Mr. Alexander and his counsel signed a Statement of Defendant in Support of Guilty Plea (Plea Affidavit). In the Plea Affidavit, the elements of the burglary charge were identified

---

3. The original question on certiorari was "[w]hether the court of appeals erred in failing to address [the State's] harmless error argument." But the parties' arguments center on whether the court of appeals erred in declining to require a showing of prejudice. Accordingly, we limit our analysis to the latter issue.

4. 777 P.2d 1029 (Utah 1989), *superseded by statute on other grounds, as recognized in Taylor v. State,* 2012 UT 5, ¶ 11 n. 3, 270 P.3d 471.

5. *See* Utah Code § 76–6–202(1) ("An actor is guilty of burglary who enters or remains unlawfully in a building or any portion of a building with intent to commit: (a) a felony; (b) theft; (c)

an assault on any person; (d) lewdness . . .; (e) sexual battery, a violation of Subsection 76–9–702(3); (f) lewdness involving a child . . .; or (g) voyeurism. . . .").

6. *See id.* § 76–9–702(3) ("A person is guilty of sexual battery if the person under circumstances not amounting to rape . . . [or] forcible sexual abuse . . . intentionally touches . . . the anus, buttocks, or any part of the genitals of another person, or the breast of a female, and the actor's conduct is under circumstances the actor knows or should know will likely cause affront or alarm to the person touched.").

as follows: "The defendant (1) remained unlawfully (2) in a dwelling (3) with the intent to commit a felony, theft, assault, lewdness, or sexual battery." Neither the amended charging documents nor the Plea Affidavit described or listed the elements of sexual battery. As to the factual basis for the burglary charge, the Plea Affidavit stated, "On 1/29/06 at [omitted address] in Salt Lake County, Utah, the defendant was in the apartment of [the alleged victim] and committed the offense of sexual battery on [her]."

¶ 9 Before accepting the guilty plea, the district court held a hearing where it reviewed with Mr. Alexander the amended charging documents and the Plea Affidavit. Although the district court did not discuss the elements of sexual battery, the court did ask Mr. Alexander's counsel if he had explained "what a second degree felony means" and if he felt that Mr. Alexander was entering a knowing and voluntary plea. Mr. Alexander's counsel stated that he had "reviewed the amended [charging documents] with [Mr. Alexander] as well as th[e] [Plea Affidavit] outlining all of those issues." He also articulated the factual basis for the plea as follows:

[O]n January 29th [of] 2006 ..., Mr. Alexander was in the [home] of [the alleged victim], a friend of his.... [H]e was allowed into the [home], but while [there], he committed the offense of sexual battery on [her].

The prosecutor then clarified that while Mr. Alexander was in the alleged victim's home, "she start[ed] to do some actions that clearly t[old] [him] that he need[ed] to be out of the apartment and instead of leaving, he remain[ed] with the intent as we've outlined." When the court asked Mr. Alexander if that factual basis was accurate, he responded,

"Yes, sir." The court then informed Mr. Alexander of the rights he was waiving by pleading guilty, and the court accepted his guilty plea.

¶ 10 Prior to sentencing, Mr. Alexander filed a timely motion to withdraw his guilty plea. In support of his motion, he alleged that the district court had failed to apprise him of the nature and elements of sexual battery, as it was required to do by rule 11(e)(4)(A) of the Utah Rules of Criminal Procedure.[7] He also asserted that, because he was never informed of the nature and elements of sexual battery, which was the specific intent crime underlying the burglary charge, his plea was not knowingly and voluntarily made. The court denied Mr. Alexander's motion and later sentenced him to a prison term of one to fifteen years.[8]

¶ 11 Mr. Alexander appealed the district court's denial of his motion to the Utah Court of Appeals. At the court of appeals, he argued that his plea was unknowing and involuntary because he did not understand the nature and elements of sexual battery.[9] The court of appeals reviewed the Plea Affidavit and the plea hearing, and it determined that they "contain[ed] no discussion of the elements of sexual battery."[10] The court stated that because intent to commit sexual battery "was the crux of the burglary charge against [Mr. Alexander], the trial court was required [by rule 11(e)(4)(A) ] to ensure that [he] understood the elements of sexual battery—and that he was pleading guilty to all of those elements—before accepting his guilty plea."[11] The court of appeals assumed that because the district court had failed to comply with rule 11 when accepting Mr. Alexander's guilty plea, the plea was not

---

7. UTAH R.CRIM. P. 11(e)(4)(A) ("The court ... may not accept the [guilty] plea until the court has found ... [that] the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements....").

8. If Mr. Alexander had been found guilty of the original charges of rape and forcible sexual abuse, he would have been sentenced to a prison term *and* would have had to register as a sexual offender. By pleading guilty to the burglary charge, Mr. Alexander avoided being required to register as a sexual offender.

9. *State v. Alexander*, 2009 UT App 188, ¶ 5, 214 P.3d 889.

10. *Id.* ¶ 12.

11. *Id.* ¶ 11.

knowingly and voluntarily entered.[12] Accordingly, the court of appeals reversed the district court's decision and held that Mr. Alexander could withdraw his guilty plea.[13]

¶ 12 After the court of appeals issued its opinion, the State filed a petition for certiorari, which we granted. The State contends that the court of appeals erred in three respects. First, the State argues that the court of appeals erred in limiting its analysis to whether the district court complied with rule 11 and in assuming that a violation of rule 11 automatically renders a plea unknowing and involuntary. The State asserts that, under a proper analysis, the court would conclude that Mr. Alexander's plea was in fact knowing and voluntary because the record demonstrates that he was adequately informed of the "intent to commit sexual battery" element of the burglary charge. Second, the State contends that the court of appeals erred in declining to require Mr. Alexander to demonstrate that, "but for" any deficiency in the plea, he would not have pled guilty. According to the State, such a showing is mandated by rule 11(l). Finally, the State argues that the court of appeals' decision conflicts with our prior holding in *Hurst v. Cook*,[14] and that this conflict requires reversal.

¶ 13 In contrast, Mr. Alexander first argues that even if the court of appeals did err in its analysis, the record does not demonstrate that he was adequately informed of the elements of sexual battery, and thus, his plea was not knowing and voluntary. Second, he contends that the court of appeals did not err in declining to require a showing

of prejudice because rule 11(l) does not mandate such a showing. Finally, he argues that the court of appeals' decision in the instant case does not conflict with our prior holding in *Hurst* because the two cases address separate and distinct issues.

¶ 14 We have jurisdiction pursuant to section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 15 "On certiorari, we review .... the court of appeals' decision for correctness and give its conclusions of law no deference."[15]

## ANALYSIS

■ ¶ 16 A guilty plea involves the waiver of several constitutional rights and is therefore valid under the Due Process Clause of the U.S. Constitution only if it is made "voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."[16] A plea is not knowing and voluntary when the record demonstrates that "the accused does not understand the nature of the constitutional protections that he is waiving, or [when] he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."[17]

■ ¶ 17 In order to ensure that defendants have a complete understanding of the charge and of the constitutional rights they are waiving by entering a plea, we created rule 11 of the Utah Rules of Criminal Procedure.[18] Rule 11 is a prophylactic measure that "is designed to protect an individual's

---

**12.** *Id.* ¶ 13 ("[W]e conclude that the trial court did not strictly comply with rule 11 when it accepted [Mr.] Alexander's plea and that the trial court exceeded its discretion in denying [Mr.] Alexander's motion to withdraw because the plea was not knowing and voluntar[y].").

**13.** *Id.* ¶ 14.

**14.** 777 P.2d 1029 (Utah 1989).

**15.** *Bluemel v. State*, 2007 UT 90, ¶ 9, 173 P.3d 842 (internal quotation marks omitted).

**16.** *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (internal

quotation marks omitted); *see also Bluemel v. State*, 2007 UT 90, ¶ 17, 173 P.3d 842. ("Because a guilty plea involves the waiver of several constitutional rights, a guilty plea is not valid under the Due Process Clause of the United States Constitution unless it is knowing and voluntary.").

**17.** *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (citation omitted).

**18.** *See State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242 ("[T]he substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the basic consequences of their decision to plead guilty.").

rights when entering a guilty plea by ensuring that the defendant receives full notice of the charges, the elements, how the defendant's conduct amounts to a crime, the consequences of the plea, etc."[19] Further, compliance with rule 11 creates a record demonstrating that the defendant was informed of important constitutional rights.[20]

¶ 18 In pertinent part, rule 11(e) provides that the court may not accept a guilty plea until the court has found that

(2) the plea is voluntarily made;

(3) the defendant knows of the right to the presumption of innocence, the right against compulsory self-incrimination, the right to a speedy public trial before an impartial jury, the right to confront and cross-examine in open court the prosecution witnesses, the right to compel the attendance of defense witnesses, and that by entering the plea, these rights are waived;

(4)(A) the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements;

(4)(B) there is a factual basis for the plea....[, which] is sufficient if it establishes that the charged crime was actually committed by the defendant or, if the defendant refuses or is otherwise unable to admit culpability, that the prosecution has sufficient evidence to establish a substantial risk of conviction.[21]

¶ 19 Although rule 11 provides guidance for the entry of guilty pleas,[22] any attempt to withdraw that plea is governed by statute.[23] Under the Plea Withdrawal Statute, a plea may be withdrawn *"only* upon leave of the court and a showing that [the plea] was *not knowingly and voluntarily made."*[24] This statutory standard mirrors the showing necessary for defendants to prove that their pleas are unconstitutional.[25]

¶ 20 With this background in mind, we now address the three issues presented on certiorari.

I. ALTHOUGH THE COURT OF APPEALS ERRED IN LIMITING ITS REVIEW TO WHETHER THE DISTRICT COURT COMPLIED WITH RULE 11 DURING THE PLEA HEARING, THE RECORD NONETHELESS DEMONSTRATES THAT MR. ALEXANDER'S PLEA WAS NOT KNOWINGLY AND VOLUNTARILY MADE

¶ 21 The first question presented on certiorari is "whether the court of appeals erred in its evaluation of the case in relation to the record and the standard for a knowing and voluntary plea." When evaluating whether Mr. Alexander's plea was knowing and voluntary, the court of appeals limited its review to whether the plea hearing, and those sources incorporated into the plea hearing, showed that the district court complied with rule 11.[26] Because those sources did not list or describe the elements of sexual battery— the specific intent crime underlying the burglary charge—the court of appeals found a violation of rule 11(e)(4)(A).[27] The court of

19. *Bluemel*, 2007 UT 90, ¶ 17, 173 P.3d 842 (internal quotation marks omitted).

20. *See State v. Hoff*, 814 P.2d 1119, 1122 (Utah 1991).

21. Utah R.Crim. P. 11(e)(2)-(4).

22. *See State v. Corwell*, 2005 UT 28, ¶ 11, 114 P.3d 569; *see also* Utah R.Crim. P. 11(e).

23. *See* Utah Code § 77–13–6; *see also State v. Gallegos*, 738 P.2d 1040, 1041 (Utah 1987) ("[W]ithdrawal of a plea of guilty is a privilege, not a right.").

24. Utah Code § 77–13–6(2)(a) (emphases added).

25. *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

26. *State v. Alexander*, 2009 UT App 188, ¶¶ 12– 13, 214 P.3d 889.

27. *Id.* ¶¶ 12–14; *see also* Utah R.Crim. P. 11(e)(4)(A) ("The court ... may not accept the [guilty] plea until the court has found ... [that] the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond

appeals assumed that this violation automatically rendered Mr. Alexander's plea unknowing and involuntary, and it therefore allowed him to withdraw his plea.[28]

¶ 22 To determine whether the court of appeals erred in its analysis, we address (A) whether it was an error for the court to focus exclusively on rule 11 and to assume that a violation of rule 11 during a plea hearing automatically renders a plea unknowing and involuntary and (B) whether, despite any error in the court of appeals' analysis, an appropriate evaluation nonetheless illustrates that Mr. Alexander's plea was not knowingly and voluntarily made.

*A. The Court of Appeals Erred in Assuming that a Violation of Rule 11 During a Plea Hearing Automatically Renders a Plea Unknowing and Involuntary*

¶ 23 As discussed above, the Plea Withdrawal Statute governs the withdrawal of guilty pleas.[29] The Statute currently provides that a guilty plea may be withdrawn "*only* upon leave of the court and a showing that [the plea] *was not knowingly and voluntarily made*."[30] "[T]he burden of proof is on the defendant, who must show that his or her plea was not knowingly and voluntarily made."[31] To show that a plea was not knowing and voluntary, a defendant must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had "such an incomplete understanding of

the charge that his plea cannot stand as an intelligent admission of guilt."[32]

¶ 24 In order to assist courts in determining whether a plea is knowingly and voluntarily made, we created rule 11. Rule 11 highlights important rights that defendants must understand in order for their pleas to be valid.[33] By addressing those rights with the defendant in the plea hearing, district courts can test the knowing and voluntary nature of the plea and create a record of their inquiry.[34] Indeed, where a district court complies with all the provisions of rule 11, the court forecloses many potential arguments that the defendant's plea was not knowingly and voluntarily made. In this respect, determining whether the district court complied with rule 11 during the plea hearing may be an appropriate step in evaluating whether the defendant's plea was knowing and voluntary.

¶ 25 But in evaluating whether a plea was knowingly and voluntarily made, courts should not limit their analysis to compliance with rule 11 during the plea hearing.[35] This is because compliance with rule 11 is not mandated by the Plea Withdrawal Statute or by the U.S. Constitution.[36] Instead, under the statutory standard to withdraw a guilty plea, courts must examine whether there is evidence that defendants knew of their constitutional rights and fully

---

a reasonable doubt, and that the plea is an admission of all those elements.").

**28.** *See Alexander*, 2009 UT App 188, ¶¶ 12–14, 214 P.3d 889.

**29.** Utah Code § 77–13–6(2)(a).

**30.** *Id.* (emphases added).

**31.** *State v. Ruiz*, 2012 UT 29, 37, 282 P.3d 998.

**32.** *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

**33.** *See State v. Lovell*, 2011 UT 36, ¶ 28, 262 P.3d 803.

**34.** *See State v. Hoff*, 814 P.2d 1119, 1122 (Utah 1991); *see also* Utah R.Crim. P. 11 advisory committee's note (stating that compliance with the

provisions of rule 11, even via plea affidavit, allows a court to conduct with the defendant "a more focused and probing inquiry into the facts of the offense, the relationship of the law to those facts, and whether the plea is knowingly and voluntarily entered").

**35.** *See Bluemel v. State*, 2007 UT 90, ¶ 18, 173 P.3d 842 (stating that to show that a plea is not knowing and voluntary, a defendant " 'must show more than a violation of the prophylactic provisions of [r]ule 11' " (quoting *Salazar v. Utah State Prison*, 852 P.2d 988, 992 (Utah 1993))).

**36.** *See id.* ("[A] rule 11 violation does not necessarily constitute a constitutional violation under either the Utah Constitution or the United States Constitution."); Utah Code § 77–13–6(2)(a) ("A plea of guilty ... may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made.").

understood the charges.[37] Thus, even if there was a violation of rule 11 during the plea hearing, appellate courts must continue to inquire into whether there is evidence that the plea was nonetheless knowingly and voluntarily made.[38]

¶ 26 In this case, when evaluating whether Mr. Alexander's plea was knowing and voluntary, the court of appeals limited its review to whether the plea hearing, and those documents incorporated into the plea hearing, showed that the district court had complied with rule 11.[39] The court of appeals then concluded that because those sources did not list or discuss the elements of sexual battery, the district court had violated rule 11.[40] The court of appeals therefore ended its analysis upon finding a rule 11 violation because it assumed that this violation automatically rendered Mr. Alexander's plea unknowing and involuntary.[41] In so doing, the court of appeals erred.[42]

¶ 27 Because the Plea Withdrawal Statute requires defendants to show that their pleas were not in fact knowingly and voluntarily made, we hold that the court of appeals erred in limiting its analysis to whether the district court complied with rule 11. Further, the court of appeals erred in assuming that a

violation of rule 11 during the plea hearing automatically rendered a plea unknowing and involuntary.

B.  *Mr. Alexander's Plea Was Not Knowingly and Voluntarily Made Because There Is No Evidence in the Record that He in Fact Knew Of or Understood the Critical Elements of the Charge*

¶ 28 Having determined that the court of appeals erred in conducting its analysis of Mr. Alexander's plea, we nonetheless conclude that a proper review of the record reflects that the plea was not knowingly and voluntarily made.

¶ 29 As stated above, the current Plea Withdrawal Statute requires that, to withdraw a guilty plea, defendants must show that their pleas were "not knowingly and voluntarily made." [43] A plea is not knowing and voluntary when the defendant "does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." [44] To have a complete understanding of the

---

**37.**  *See, e.g., Jolivet v. Cook*, 784 P.2d 1148, 1149–50 (Utah 1989) (noting that although the district court did not appear to comply with rule 11 during the plea hearing, the record nonetheless illustrated that the defendant's plea was knowingly and voluntarily made).

**38.**  *See id.*

**39.**  *Alexander*, 2009 UT App 188, ¶¶ 12–13, 214 P.3d 889.

**40.**  *See id.* ¶ 14.

**41.**  *See id.*

**42.**  We note that the court of appeals' analysis for examining motions to withdraw guilty pleas was proper under a *previous* version of the Plea Withdrawal Statute. Prior to 2003, the statutory standard for a defendant to withdraw a guilty plea was merely a showing of "good cause." *See* Utah Code § 77–13–6(2)(a) (2002) ("A plea of guilty ... may be withdrawn only upon good cause shown and with leave of the court."). Under this prior version of the Statute, demonstrating a violation of rule 11 alone was "good cause" for defendants to withdraw their pleas. *See, e.g., Lovell*, 2011 UT 36, ¶ 45, 262 P.3d 803 ("We conclude that the trial judge's failure to strictly

comply with rule 11(e) requires us to presume harm and thus constitutes good cause to withdraw a guilty plea."). Thus, in evaluating motions to withdraw guilty pleas under the pre–2003 statutory standard, courts routinely limited their analysis to whether the district court had complied with rule 11 during the plea hearing. *See, e.g., id.* ¶¶ 31–39 (evaluating whether the district court complied with rule 11(e)); *State v. Martinez*, 2001 UT 12, ¶¶ 23–25, 26 P.3d 203 (same).

But in 2003, the Plea Withdrawal Statute was amended to allow withdrawal only upon a showing that the plea "was not knowingly and voluntarily made." Utah Code § 77–13–6(2)(a) (2003). This amendment significantly altered the analysis necessary when evaluating motions to withdraw guilty pleas. Where a rule 11 violation was sufficient under the former "good cause" standard, under the amended Plea Withdrawal Statute, courts must examine the record to determine whether the defendant's plea was actually knowing and voluntary.

**43.**  Utah Code § 77–13–6(2)(a).

**44.**  *Henderson*, 426 U.S. at 645 n. 13, 96 S.Ct. 2253 (citation omitted).

charge, the U.S. Supreme Court has stated that a defendant must possess "an understanding of the law in relation to the facts." [45]

¶ 30 In determining whether a defendant understands the law in relation to the facts, courts review whether the defendant understood the "critical" [46] or "essential" [47] elements of the crime to which he pled guilty.[48] This is because a defendant must understand what critical elements the State would have to prove beyond a reasonable doubt to secure a conviction.[49] Without knowing the elements that the State would have to prove, a defendant cannot intelligent-

ly weigh the risks and benefits of going to trial versus pleading guilty.[50]

¶ 31 When examining whether a defendant understood the essential elements of the offense, a court "is not limited to the record of the plea hearing but may look at the surrounding facts and circumstances." [51] Indeed, there are many ways to demonstrate that the defendant had a sufficient understanding of the law in relation to the facts.[52] For example, the defendant's counsel may make a representation on the record that he or she has explained to the defendant the nature of the charge and the essential elements of the crime.[53] In addition, the record

---

45. *Boykin v. Alabama*, 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (internal quotation marks omitted)); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("[A plea] cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.").

46. *Henderson*, 426 U.S. at 647 n. 18, 96 S.Ct. 2253 ("There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume it does not. Nevertheless, intent is such a *critical element* of the offense of second-degree murder that notice of that element is required." (emphasis added)).

47. *Bousley v. United States*, 523 U.S. 614, 618–19, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (stating that, if the defendant did not understand "the *essential elements* of the crime with which he was charged .... [the defendant's] plea would be ... constitutionally invalid" (emphasis added)).

48. *See Bradshaw v. Stumpf*, 545 U.S. 175, 182–83, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) ("[A defendant's] guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, *including the elements of the ... charge to which he pleaded guilty.*" (emphasis added)); *id.* at 183 ("Where a defendant pleads guilty to a crime without having been informed of the crime's elements, [the knowing and voluntary] standard is not met and the plea is invalid.").

49. *See Henderson*, 426 U.S. at 645–46, 96 S.Ct. 2253 (recognizing that had the defendant not pled guilty, the prosecution would have to prove the requisite intent to the jury).

50. *See Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.").

51. *Salazar*, 852 P.2d at 992; *see also Jolivet*, 784 P.2d at 1149–50 (noting that although the plea hearing did not contain a discussion of the elements of the crime to which the defendant pled guilty, the defendant's plea was knowing and voluntary because the record reflected that he attended the preliminary hearing where the judge "listed the crimes charged and the alleged facts relating to those charges" and because the defendant stated that he had received, read, and understood the charging documents listing "the crimes charged, and the facts, in element form, that make out each element and, lastly, [gave] the statutory citation for each crime").

52. *See, e.g., Bousley*, 523 U.S. at 618–19, 118 S.Ct. 1604 (explaining that a defendant's plea would be "constitutionally invalid" if "the record reveals that neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged."); *Commonwealth v. Nikas*, 431 Mass. 453, 727 N.E.2d 1166, 1170 (2000) ("[I]t does not matter whether a defendant acquires an understanding of the elements of the relevant crime or crimes from the judge, from his attorney, or in some other way. All that is necessary is that the record show that, by some means, the defendant possessed enough comprehension to plead freely and understandingly." (internal quotation marks omitted)).

53. *See Bradshaw*, 545 U.S. at 183, 125 S.Ct. 2398 ("[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.").

may show that the defendant knew of the facts that the State would have to prove to secure a conviction on the charged crime.[54] Further, the record may illustrate that the critical elements of the charge were explained to the defendant at some point in the overall proceeding.[55]

¶ 32 In this case, the State has not challenged the court of appeals' conclusion that "intent to commit sexual battery once inside the alleged victim's home was the crux of the burglary charge."[56] Instead, the State highlights three portions of the record to show that Mr. Alexander was presented with enough information to have a sufficient understanding of the "intent to commit sexual battery" element of the burglary charge. First, it asserts that Mr. Alexander's own counsel affirmed on the record that he had explained all of the critical elements of burglary—including the underlying specific intent crime of sexual battery—to Mr. Alexander. Second, it contends that Mr. Alexander showed that he understood the underlying elements of sexual battery because he was aware of the factual basis for the burglary charge. Finally, it asserts that Mr. Alexander sufficiently understood the meaning of "intent to commit sexual battery" because he was informed of the "sexual nature" of the offense by being present at the preliminary hearing on the original charges. We reject each of the State's arguments.

¶ 33 First, the record does not demonstrate that Mr. Alexander's own counsel affirmed he had explained the element of "intent to commit sexual battery" to his client. Instead, a review of the plea hearing's transcript shows that Mr. Alexander's counsel stated that he had "reviewed the amended [charging documents] with [Mr. Alexander] as well as [the Plea Affidavit] outlining all of those issues." Thus, at most, Mr. Alexander's counsel confirmed that he had reviewed *the contents* of the amended charging documents and Plea Affidavit with his client. But neither of these documents provided or discussed the element of "intent to commit sexual battery" or described what that element must entail. Because defense counsel did not affirm on the record that he had explained the element of "intent to commit sexual battery" to Mr. Alexander, the court cannot assume that Mr. Alexander understood this critical element.[57]

¶ 34 Second, contrary to the State's position, Mr. Alexander's acknowledgment of the factual basis for the burglary charge does not show that he understood the underlying elements of sexual battery. In this case, Mr. Alexander was presented with three factual bases for the burglary charge. A factual basis for the burglary charge was provided in the Plea Affidavit,[58] by Mr. Alexander's counsel,[59] and by the prosecutor during the plea

54. *See, e.g., State v. Thurman*, 911 P.2d 371, 375 (Utah 1996) (reviewing whether defendant understood the facts the State would have to prove in a manner sufficient to demonstrate that he had an understanding of the law in relation to the facts).

55. *See Jolivet*, 784 P.2d at 1149–50 (recognizing that the defendant was informed of the statutory criteria for each of the "crimes charged, and the facts, in element form, that make out each element" during a preliminary hearing and in the charging documents).

56. *Alexander*, 2009 UT App 188, ¶ 11, 214 P.3d 889. Indeed, our case law recognizes that it is "the intent to commit" the specific underlying offense which qualifies the crime as burglary. *State v. Brooks*, 631 P.2d 878, 881 (Utah 1981) ("The act of entering [a building] alone does not give rise to an inference that the actor entered with the requisite intent to constitute burglary. The intent to commit a felony, theft, or assault must be proved, or circumstances shown from which the intent may reasonably be inferred. It is

the intent to commit [the underlying crime], and not the actual [crime], which is material." (footnote omitted)), *overruled on other grounds, as recognized in West v. Holley*, 2004 UT 97, ¶ 16 n. 2, 103 P.3d 708; *State v. Evans*, 74 Utah 389, 279 P. 950, 952 (Utah 1929) ("The prosecution being for burglary, the intent with which the [defendant] entered the home ... becomes the crux of the case.").

57. *See Bradshaw*, 545 U.S. at 183, 125 S.Ct. 2398.

58. The Plea Affidavit stated that "[o]n 1–29–06 at [omitted address] ... the defendant was in the apartment of [the alleged victim] and committed the offense of sexual battery on [her]."

59. When asked to recite the factual basis in the plea hearing, Mr. Alexander's counsel stated that "on January 29th [of] 2006 at [omitted address] in Salt Lake County, Mr. Alexander was in the apartment of [the alleged victim], a friend of his. He did—he was allowed into the apartment, but

hearing.[60] Yet not one of these factual bases provided the facts necessary to show that Mr. Alexander had the intent to commit sexual battery, meaning the intent to "touch[ ] ... the anus, buttocks, or any part of the genitals ..., or the breast of [the alleged victim] ... under circumstances" he knew or should have known would "likely cause affront or alarm." [61] Thus, the factual bases discussed in the record did not put Mr. Alexander on notice of the elements of sexual battery.

¶ 35 Finally, we reject the State's argument that Mr. Alexander understood the meaning of "intent to commit sexual battery" because he attended a preliminary hearing on the original charges of rape and forcible sexual abuse. The State argues that, because the original charges were "sexual in nature," Mr. Alexander had a "conceptual understanding" of sexual battery. But for a plea to be knowing and voluntary, a defendant must possess more than a conceptual understanding of the nature of the offense; he must have "an understanding of the law in relation to the facts." [62] As stated previously, a defendant must understand what critical elements the State would have to prove beyond a reasonable doubt to secure a conviction.[63] And without knowing the elements that the State would have to prove, a defendant cannot intelligently weigh the risks and benefits of going to trial versus pleading guilty.[64]

¶ 36 In this case, neither the preliminary hearing nor the original charging docu-ments put Mr. Alexander on notice of what the State would have to prove to secure a conviction for burglary with intent to commit sexual battery. Indeed, by amending the charge, the State altered the critical element of the mental state with which it would have to prove Mr. Alexander acted.[65] Under the original charges discussed at the preliminary hearing, the State was required to prove that Mr. Alexander touched the alleged victim's anus, buttocks, genitals, or breast *"with intent to cause substantial emotional or bodily pain ... or with the intent to arouse or gratify the sexual desire of any person,* without the consent of the other." [66] But under the burglary charge, the State was required to prove that Mr. Alexander touched the alleged victim's anus, buttocks, genitals, or breast *with the intent to "cause affront or alarm to [her]."* [67] Because the amendment altered the intent element of the charge, Mr. Alexander should have been informed that the State was required to prove this new intent beyond a reasonable doubt. Without knowing what the State would have to prove, Mr. Alexander could not make an intelligent decision sufficient for a knowing and voluntary plea.

¶ 37 Because a review of the record does not demonstrate that Mr. Alexander was informed of or understood the essential elements of the burglary charge—specifically, the element of "intent to commit sexual battery"—it is not clear that he had "an understanding of the law in relation to the facts" sufficient for his plea to stand as an intelligent admission of guilt. We therefore con-

---

while in the apartment, he committed the offense of sexual battery on [her]."

60. During the plea hearing, the prosecutor explained that while Mr. Alexander was in the alleged victim's home, the alleged victim "start[ed] to do some actions that clearly t[old] him that he need[ed] to be out of the apartment and instead of leaving, he remain[ed] with the intent as we've outlined."

61. Utah Code § 76–9–702(3).

62. *Boykin,* 395 U.S. at 243 n. 5, 89 S.Ct. 1709 (internal quotation marks omitted); *McCarthy,* 394 U.S. at 466, 89 S.Ct. 1166.

63. *See Henderson,* 426 U.S. at 645–46, 96 S.Ct. 2253.

64. *See Brady,* 397 U.S. at 756, 90 S.Ct. 1463.

65. Courts recognize that a defendant's intent is a critical element of the offense. *See Henderson,* 426 U.S. at 647 n. 18, 96 S.Ct. 2253 ("[I]ntent is such a critical element of the offense ... that notice of that element is required."); *Allen v. Mullin,* 368 F.3d 1220, 1242 (10th Cir.2004) ("[W]e do not gainsay that the intent element of a criminal offense is a critical element of the charge.").

66. Utah Code § 76–5–404(1) (emphases added).

67. *Id.* § 76–9–702(3) (emphasis added).

clude that Mr. Alexander's plea was unknowingly and involuntarily made, and we hold that Mr. Alexander has made the showing necessary to withdraw his guilty plea.

## II. BECAUSE A SHOWING OF PREJUDICE IS NOT REQUIRED BY RULE 11(*l*), THE COURT OF APPEALS DID NOT ERR IN DECLINING TO REQUIRE SUCH A SHOWING

■ ¶ 38 The second question presented on certiorari is whether the court of appeals erred in declining to require a showing of prejudice for a violation of rule 11. Specifically, the State asserts that pursuant to rule 11(*l*), defendants seeking to withdraw their pleas must show that any rule 11 violation was prejudicial, meaning that, "but for" the violation, they would not have pled guilty.[68] We disagree with the State's argument that rule 11(*l*) mandates a showing of prejudice.

¶ 39 To determine the meaning of rule 11(*l*), we use our traditional tools of interpretation. When interpreting a rule, "[o]ur objective ... is to give effect to the intent of the body that promulgated it." [69] Thus, we interpret a rule "in accordance with its plain meaning, and we construe the rule so that it is in harmony with related rules." [70] When we interpret our own rule, that interpretation must be informed by and consistent with statutes that also govern the issue. This is because, under the separation of powers doctrine, the court's rule may not intrude on a function that is legislative or executive.[71]

¶ 40 As the judicial branch of government, we "protect and enforce existing rights." [72] Consistent with that function, we have the power to create rules of evidence and other court rules that prescribe the method by which individuals enforce their rights.[73] Indeed, our court rules, such as the Utah Rules of Civil Procedure and the Utah Rules of Criminal Procedure, "provide a pattern of regularity of procedure which the parties and the courts can follow and rely upon." [74] But these rules are only *procedural* in nature and cannot create or modify substantive rights of litigants.[75]

¶ 41 Instead, it is the Legislature's function to create a litigant's legal rights, liabilities, and remedies consistent with the state

68. In its opening brief, the State also contends that our case law requires a showing of prejudice for violations of rule 11. But the State's brief was submitted before we issued *State v. Lovell*, an opinion that directly addressed this issue. *See* 2011 UT 36, ¶¶ 50, 56–61, 262 P.3d 803. In *Lovell*, we held that our case law does not support the application of a prejudice requirement to preserved claims of rule 11(e) violations. *Id.* ¶ 50. Because we fully resolved this issue in *Lovell*, we do not address the State's assertion that our case law also mandates a showing of prejudice.

We note, however, that the State's argument concerning the interpretation and application of rule 11(*l*) was not addressed in *Lovell* because we explicitly "decline[d] to retroactively apply ... [this subsection of the] rule to [the defendant]." *Id.* ¶ 74. Thus, the interpretation of rule 11(*l*) is appropriately resolved in the instant opinion.

69. *State v. Rothlisberger*, 2006 UT 49, ¶ 15, 147 P.3d 1176.

70. *Id.* (footnote omitted).

71. *See* UTAH CONST. art. V, § 1 ("The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.").

72. *Brown v. Wightman*, 47 Utah 31, 151 P. 366, 367 (1915).

73. *See* UTAH CONST. art. VIII, § 4 ("The Supreme Court shall adopt rules of procedure and evidence to be used in the courts of the state and shall by rule manage the appellate process.").

74. *Gillett v. Price*, 2006 UT 24, ¶ 8, 135 P.3d 861 (alteration omitted) (internal quotation marks omitted).

75. *State v. Banner*, 717 P.2d 1325, 1333 (Utah 1986) ("The limitations on rules announced by this [c]ourt which supplant legislative enactments are that the [c]ourt may not change the substantive rights of any litigant; the rules must only be procedural in nature."); *Scott v. Majors*, 1999 UT App 139, ¶ 12, 980 P.2d 214 ("The purpose of the [rules created by the court] is to bring order to the manner in which the courts operate. They are not intended to, nor do they, create or modify substantive rights of litigants, nor do they decrease the inherent power of the court to control matters pending before it.").

and federal constitutions.[76] Pursuant to that power, the Legislature enacted the Plea Withdrawal Statute, which establishes the standard necessary for a defendant to withdraw a guilty plea.[77] Under the current statutory standard, to withdraw a plea, a defendant must show that the plea was "not knowingly and voluntarily made."[78] Because the Legislature has established the standard to withdraw a guilty plea, we must interpret rule 11($l$) in a manner consistent with that standard.

¶ 42 The relevant portion of rule 11($l$) provides that "[a]ny variance from the procedures required by this rule *which does not affect substantial rights shall be disregarded.*"[79] Thus, as long as a defendant's substantial rights are not affected, procedural violations of rule 11 do not alone entitle a defendant to withdraw his guilty plea. To determine the "substantial right" that must be affected in order to allow a defendant to withdraw his guilty plea, we examine our intent in adopting the language of subsection ($l$).

¶ 43 When the Supreme Court's Advisory Committee on the Rules of Criminal Procedure (Committee) proposed the text of the rule, they sought to bring rule 11 in line with the recently amended Plea Withdrawal Statute.[80] Indeed, in proposing the text of rule 11($l$), the Committee highlighted that, consistent with the statutory standard to withdraw a guilty plea, courts should focus their analysis "on the voluntariness of the plea and not [exclusively] on the words that are spoken" during the plea hearing.[81] Thus, the Committee intended subsection ($l$) to communicate that, in evaluating motions to withdraw a guilty plea, courts must examine the knowing and voluntary nature of the plea—not just whether the plea hearing was conducted in compliance with rule 11.

¶ 44 This was also our intent in adopting rule 11($l$). Consistent with the standard set forth in the Plea Withdrawal Statute, we intended that the "substantial right" that must be affected to justify the withdrawal of a guilty plea is the defendant's right to knowingly and voluntarily make his or her plea. And because the court's proper inquiry is whether the plea was knowingly and voluntarily made, we intended rule 11($l$) to communicate that courts should not limit their analysis to evaluating whether the plea was taken in compliance with rule 11. Indeed, to withdraw a plea under the current Statute, defendants "must show more than a violation of the prophylactic provisions of [r]ule 11; [they] must show that the guilty plea was in fact not knowing and voluntary."[82] By adding subsection ($l$), we sought to signal to district courts, attorneys, and defendants that defendants must do more than show a violation of rule 11 in order to withdraw a guilty plea.

¶ 45 The State argues that subsection ($l$) requires a showing of prejudice. According to the State, rule 11($l$) mandates that to withdraw a guilty plea, a defendant must show that an error rendered his plea unknowing and involuntary *and* that he would not have pled guilty "but for" this error. We reject this interpretation of rule 11($l$) because it conflicts with our intent, with the standard codified in the Plea Withdrawal Statute, and with our case law recognizing that errors in the plea process are different than errors in other contexts.

¶ 46 First, requiring a showing of prejudice conflicts with our intent when adopting the language of rule 11($l$).[83] As discussed above, our intent in adopting subsection ($l$) was to signal that procedural violations of rule 11 alone may be disregarded if the

---

**76.** *Brown,* 151 P. at 367 ("The right and power, as well as the duty, of creating rights and to provide remedies, lies with the Legislature, and not with the courts.").

**77.** Utah Code § 77–13–6(2)(a).

**78.** *Id.*

**79.** Utah R.Crim. P. 11(*l*) (emphasis added).

**80.** Supreme Court's Advisory Committee on the Rules of Criminal Procedure, Minutes of July 20, 2004 Meeting, 1–2 (July 20, 2004) [hereinafter Committee Minutes].

**81.** *Id.* at 1.

**82.** *Bluemel v. State,* 2007 UT 90, ¶ 18, 173 P.3d 842 (internal quotation marks omitted).

**83.** *See supra* ¶¶ 43–44.

defendant's plea was nonetheless knowingly and voluntarily made.[84]

¶ 47 Second, the Legislature has not required a showing of prejudice. By enacting the Plea Withdrawal Statute, the Legislature provided that defendants need show only that their pleas were not knowingly and voluntarily made in order to withdraw a guilty plea.[85] Importantly, in examining whether defendants have demonstrated that their pleas were not knowingly and voluntarily made, the U.S. Supreme Court has not required defendants to demonstrate that, "but for" an error, they would not have pled guilty.[86] Instead, the Court has held that a plea is not knowing and voluntary when the record demonstrates that either "the accused does not understand the nature of the constitutional protections that he is waiving, or . . . he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."[87] This is all the showing that is required to demonstrate that a plea is not knowing and voluntary.

¶ 48 Finally, we have recognized that a showing of prejudice is unnecessary when moving to withdraw a plea because errors in the plea process are different than errors in other contexts.[88] In *Lovell,* we stated that "[t]he failure to properly inform a defendant of the [constitutional] rights he is waiving by pleading guilty . . . is quite different from the trial context because there is no other evidence against which to balance the errors."[89] And without other evidence with which to weigh and balance a deficiency in the plea, it is difficult for the court to evaluate whether the defendant would not have pled guilty "but for" the deficiency. Because we conclude that errors in accepting a guilty plea are factually distinct from errors in other contexts, we decline to require a showing of prejudice in order for a defendant to withdraw his plea.

¶ 49 For the foregoing reasons, we clarify that rule 11(*l*) was enacted to signal to courts, attorneys, and defendants that under the current Plea Withdrawal Statute, it is no longer sufficient for defendants to simply show a violation of rule 11. Now, to withdraw a plea, defendants must show that their pleas were not in fact knowingly and voluntarily made.[90] Because subsection (*l*) merely clarifies that rule 11 violations alone are not sufficient to allow withdrawal of guilty pleas, we conclude that it does not require defendants to show prejudice before they may withdraw their pleas. Accordingly, the court of appeals did not err in declining to require that Mr. Alexander show prejudice before allowing him to withdraw his guilty plea.

## III. BECAUSE *HURST v. COOK* DID NOT ADDRESS WHETHER A DEFENDANT MUST UNDERSTAND AN ELEMENT OF THE OFFENSE FOR A PLEA TO BE KNOWING AND VOLUNTARY, THE COURT OF APPEALS' DECISION IN THIS CASE DOES NOT CONFLICT WITH THAT PRECEDENT

¶ 50 In the instant case, the court of appeals addressed the issue of whether the

---

84. Although this was our intent, we recognize that in some circumstances, the phrase "affect substantial rights" requires a showing of prejudice. *See, e.g., State v. Speer,* 750 P.2d 186, 189 (Utah 1988) ("In determining whether a 'substantial right of the party is affected,' we look at the evidence as a whole in the context of the trial to determine if, absent the error, there is a reasonable likelihood that a different result would have been reached."). But, like the U.S. Supreme Court, we have not decided whether the phrase is *always* synonymous with prejudice. *See United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("We need not decide whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.' "). And in this context, we conclude that "affect substantial rights" does not mandate a showing of prejudice.

85. Utah Code § 77–13–6(2)(a).

86. *See Henderson v. Morgan,* 426 U.S. 637, 644 n. 12, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) ("[T]here is no way one can be sure that [the defendant] would have refused to enter the plea [had he been informed of a critical element of the offense]. Indeed, we assume that [the defendant] probably would have pleaded guilty anyway. Such an assumption is, however, an insufficient predicate for a conviction. . . .").

87. *Id.* at 645 n. 13, 96 S.Ct. 2253 (citation omitted).

88. *See Lovell,* 2011 UT 36, ¶ 76, 262 P.3d 803.

89. *Id.*

90. *See supra* Part I.

failure to inform a defendant of an essential element of the offense during the plea hearing renders a plea unknowing and involuntary. The State argues that we previously resolved this issue in *Hurst v. Cook*[91] by holding that a defendant may plead guilty to an offense he does not understand in order to avert harsher consequences. Thus, the State asserts that the court of appeals was bound to follow *Hurst* and that the court of appeals' holding in the instant case conflicts with our decision in *Hurst*. We disagree.

¶ 51 The issue in the case currently before us is whether a defendant must understand the elements of the offense to which he pleads guilty. Contrary to the State's argument, we did not hold in *Hurst* that a defendant does not need to *understand* the offense to which he pleads guilty.

¶ 52 In *Hurst*, the defendant challenged his guilty plea on three grounds.[92] First, he argued that he was unlawfully sentenced because he did not factually commit the crime to which he pled.[93] Second, he asserted that he was denied effective assistance of counsel because "his attorney failed to properly advise him during the plea bargaining" that he did not factually commit the crime.[94] Finally, he contended that he could not plead guilty to a crime he did not factually commit.[95] On appeal, however, we explicitly declined to address the defendant's first and second arguments.[96]

¶ 53 Thus, in *Hurst*, we addressed only the narrow question of "whether [a defendant] could lawfully plead guilty to a crime he factually did not commit to avoid risking conviction on another more serious charge."[97] Ultimately, we concluded that such a plea may be appropriate when the offense is "so related" to the original charge

that it does not distort the defendant's criminal conduct.[98] In reaching this narrow holding, we did not address whether defendants must *understand* the elements of the offense to which they plead guilty. Because our holding in *Hurst* was limited to a single issue, and that issue is not before us in this case, we conclude that the court of appeals' decision does not conflict with our holding in *Hurst*.[99]

¶ 54 Because the issue resolved in *Hurst* is separate and distinct from the issue presented in the case currently before us, we hold that the two cases do not conflict. Accordingly, we decline to reverse the court of appeals' opinion on this basis.

## CONCLUSION

¶ 55 We hold that, although the court of appeals erred in limiting its review to whether the district court had complied with rule 11 during the plea hearing, the record nonetheless demonstrates that Mr. Alexander's plea was not knowingly and voluntarily made. Second, we hold that the court of appeals did not err in failing to conduct a harmless error analysis because such an analysis is not required by rule 11(*l*). Finally, we hold that, because the instant case involves a different issue than the one addressed in our holding in *Hurst*, the two cases do not conflict. Based on these conclusions, we affirm the court of appeals' decision to allow Mr. Alexander to withdraw his guilty plea.

Chief Justice DURRANT authored the opinion of the Court, in which Justice Parrish joined in full and Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined in part.[1]

---

91. 777 P.2d 1029 (Utah 1989), *superseded by statute on other grounds, as recognized in Taylor v. State*, 2012 UT 5, ¶ 11 n. 3, 270 P.3d 471.

92. *See id.* at 1032, 1037.

93. *See id.* at 1032, 1037–38.

94. *Id.* at 1032.

95. *See id.* at 1032, 1037–38.

96. *Id.*

97. *Id.* at 1038.

98. *See id.* at 1038.

99. As stated above, the court of appeals did not discuss whether Mr. Alexander factually committed burglary with intent to commit sexual battery. Nor did it discuss whether Mr. Alexander could lawfully plead guilty to a crime he may not have factually committed. Indeed, it does not appear that Mr. Alexander ever made such arguments on appeal.

Justice DURHAM filed a concurring opinion.

Justice LEE filed an opinion concurring in part and dissenting in part, in which Associate Chief Justice NEHRING joined.

**Justice DURHAM, concurring:**

¶ 56 I concur with Chief Justice Durrant's excellent opinion, with one exception. Chief Justice Durrant's opinion places the burden on the defendant in seeking to withdraw a plea. *See supra* ¶ 23. For the reasons expressed in my concurring/dissenting opinion in *State v. Ruiz*, 2012 UT 29, 282 P.3d 998, 2012 WL 1564360, issued today, I believe that, once the defendant in this case made a prima facie showing that his plea was not entered knowingly and voluntarily, the burden should have shifted to the prosecution to demonstrate, by a preponderance of the evidence, that the plea was in fact knowing and voluntary. Even with the burden placed on the defendant, however, the majority opinion concludes that the defendant's plea was not knowingly and voluntarily entered. Thus my proposed procedural regime would not change the outcome in this case.

**Justice LEE, concurring in part and dissenting in part:**

¶ 57 I concur in large part in Chief Justice Durrant's opinion for the court, but take issue with two points in the majority's analysis. First, I disagree with the court's decision to resolve on appeal the question whether Alexander had knowledge of the elements of the crime he pled guilty to. That question was neither pressed by Alexander in his motion to withdraw nor resolved by the district court on the record. Because our opinion today breaks new ground in clarifying the centrality of that issue, we should not fault the parties (least of all the non-moving party) for failing to present evidence of relevance to its resolution. I would give the parties a

chance to litigate the key factual question on remand.

¶ 58 Second, I would base the decision affirming the court of appeals' refusal to engage in harmless error review on the textual reach of rule 11(*l*), not on a limiting construction based on our professed intent in adopting the rule. In my view, the "substantial rights" language in rule 11(*l*) is an unmistakable reference to harmless error review. Yet although the rule envisions an evaluation of harmlessness or prejudice with respect to "[a]ny variance from the procedures required by th[e] rule," UTAH R.CRIM. P. 11(*l*), this case does not turn on a mere variance from the rules but, as the court properly concludes, on the statutory question whether the defendant's plea was knowingly and voluntarily entered. Rule 11(*l*)'s harmless error standard thus has no application here, and I would affirm on that basis.

I

¶ 59 As the majority correctly concludes, a plea withdrawal motion cannot rest on a mere technical violation of the prophylactic requirements of rule 11. The withdrawal statute in Utah, rather, requires proof that the plea was entered unknowingly or involuntarily by the defendant. UTAH CODE § 77–13–6(2)(a). On that basis, the court of appeals erred in its decision to order the withdrawal of Alexander's guilty plea on the mere basis of the district court's failure to follow rule 11 in every particular.

¶ 60 To this extent I'm on the same page with the majority, which reaches this same conclusion. I part company with my colleagues, however, on the court's decision to affirm the court of appeals' decision reversing the denial of Alexander's motion to withdraw on the alternative ground that its "review of the record does not demonstrate that [ ] Alexander was informed of or understood the essential elements of the burglary charge." *Supra* ¶ 37.

---

1. Justice Durham joins Chief Justice Durrant's opinion in every respect, except for its articulation of the defendant's burden of showing that the plea was not knowingly and voluntarily made, as expressed in paragraph 23 of this opin-

ion. Associate Chief Justice Nehring and Justice Lee join with Chief Justice Durrant in placing this burden on the defendant. They also join in Part III of this opinion, along with Justice Durham and Justice Parrish.

¶ 61 The court's assessment of the state of the record seems correct as far as it goes. But it is equally true that "the record does not demonstrate that [ ] Alexander was [*not*] informed of or [*did not*] underst[and] the essential elements of the burglary charge." The record is simply silent on this controlling question. And the reason is straightforward: Alexander's motion to withdraw never asserted that he lacked knowledge of the elements of the crime, but rested on the bare assertion of a rule 11 violation.

¶ 62 In his motion to withdraw, Alexander relied solely on his legal theory that the district court's plea colloquy did not strictly follow rule 11(e). This oversight, he argued, failed to "provide [him] the factual support for the act component or the mental state component of sexual battery." Thus, Alexander's motion alleged that the court's noncompliance ultimately led to a plea that "was not entered knowingly and voluntarily pursuant to [rule] 11 and the Due Process Clause of the United States Constitution." Although the motion mouthed the words "knowingly and voluntarily," however, Alexander never raised the factual question of his state of mind in entering the guilty plea. He simply rested on the legal theory that a rule 11 violation alone was sufficient to render his plea unknowing or involuntary and thus subject to withdrawal.

¶ 63 Alexander pressed this same theory in the subsequent motion hearing, arguing that "strict compliance" with rule 11 was required and that "in this case strict compliance has not occurred, because . . . . [t]here is nothing either in the Amended Information or in the statement in advance of plea, or in the colloquy . . . that defines and sets forth the elements of sexual battery." Thus, without ever alleging that he did not know the ele-

ments of the crime he was pleading to, Alexander framed his argument not as a question of fact but as a pure question of law—whether the court's colloquy "strictly complied" with rule 11(e).

¶ 64 The court and the parties at the motion hearing focused on this legal issue, and never engaged the critical factual question of Alexander's state of mind. It is no surprise, then, that the district court received no evidence one way or the other on Alexander's knowledge of the elements of his crime. Under Alexander's own theory, he had no reason to introduce evidence of his state of mind; to him, the court's deficient colloquy was enough. The State likewise had no incentive to present evidence on a matter that was never in issue.

¶ 65 The absence of evidence in the record, then, can hardly be counted against the prosecution. Alexander never claimed an absence of knowledge of the elements of the crime he was pleading to, and the State thus had no reason to introduce evidence establishing that "Alexander was informed of or understood the essential elements of the burglary charge." *Supra* ¶ 37.

¶ 66 For these reasons, the record likewise tells us nothing about the answer to the question the court now deems dispositive. It simply indicates that the parties and the lower courts proceeded on an erroneous assumption about the controlling law. We have now corrected that error. And having done so, the correct and fair response is to give the parties the chance to litigate the question they have never litigated and that we now deem controlling.[1]

¶ 67 The question of Alexander's state of mind when entering his guilty plea is a clas-

---

1. *See Pullman–Standard v. Swint*, 456 U.S. 273, 291–292, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings[.] . . . [W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue."); *United States v. Hasan*, 609 F.3d 1121, 1129 (10th Cir.

2010) ("When the [appellate court] notices a legal error, it is not ordinarily entitled to weigh the facts itself and reach a new conclusion; instead, it must remand to the district court for it to make a new determination under the correct law."); *see also, e.g., State v. Harding*, 2011 UT 78, ¶ 39, 282 P.3d 31 (holding that because it was "a case of first impression" and because the court had "never before articulated the [pertinent legal] test . . . . remand [was] appropriate so that the district court [could] enter particularized findings of fact bearing upon the [relevant] questions.").

sic question of fact.[2] We owe substantial deference to the resolution of such an issue by the district court, as it is the court in our system with procedures for—and experience and expertise in—accepting and weighing testimonial and other evidence.[3]

¶ 68 We flout that deference when we render our own judgment on a controlling question of fact without ever giving the district court a first crack at the issue. And we deprive the parties of their rightful day in court when we resolve matters on the basis of their failure to present evidence that they never had a meaningful opportunity to present. I respectfully dissent as I see no basis for faulting the State for failing to present evidence that the defendant's motion never called into question.

¶ 69 If anything, the lack of evidence in the record ought to be counted against the party who bears the burden of proof. That party, of course, is Alexander, as the party pressing the motion to set aside his earlier guilty plea. The majority recognizes that he bears the burden as the moving party. *Supra* ¶ 23. That fact alone arguably should be enough to affirm the denial of Alexander's motion to withdraw, as a core element of the burden of proof is the burden of presenting some evidence to sustain the movant's case.[4] The court turns that principle on its head, faulting the non-moving party for failing to anticipate an alternative argument that the movant might raise on appeal—and might convince the appellate court to reach without a remand.

¶ 70 At a minimum, the prosecution is at least entitled to a remand to respond to the factual basis of the motion to withdraw as reformulated on appeal. I respectfully dissent from the court's refusal to allow for that proceeding.[5]

2. *See Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 8, ¶ 40, 270 P.3d 486 (factual findings "entail[] the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as *state of mind.*" (emphasis added) (alteration in original) (internal quotation marks omitted)).

3. *Id.* (explaining that findings of fact are accorded "the most deference" in light of the district court's "comparative advantage in its firsthand access to factual evidence"); *see also State v. Pena*, 869 P.2d 932, 936 (Utah 1994) (holding that appellate standard of review with respect to findings of fact "is highly deferential to the trial court because it is before that court that the witnesses and parties appear and the evidence is adduced" and the judge of that court is "in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record.").

4. *See Koesling v. Basamakis*, 539 P.2d 1043, 1046 (Utah 1975) ("The proponent of a proposition has two burdens relative to his proof: to produce evidence which proves or tends to prove the proposition asserted; and to persuade the trier of fact that his evidence is more credible or entitled to the greater weight"); *see also State v. Clark*, 2001 UT 9, ¶ 15, 20 P.3d 300 (noting that to survive a motion for directed verdict, the prosecution bears the burden of "produc[ing] believable evidence of all the elements of the crime charged." (internal quotation marks omitted)); *Herbert v. State*, 136 Md.App. 458, 766 A.2d 190, 202 (2001) ("As a general rule, the moving party on any proposition, civil or criminal, has both the burden of production and the burden of persuasion.").

5. The resolution of this matter is hardly a foregone conclusion on remand. Defense counsel in this case arguably represented to the court that Alexander had been properly informed of the nature and elements of burglary when he pled guilty to it, and that representation is entitled to judicial deference. *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.").

During the plea colloquy below, the district court asked defense counsel whether "[he'd] explained to [Alexander] what a second degree felony means," and whether counsel "fe[lt] like [Alexander was] agreeing to [it] knowingly and voluntarily." In response, Alexander's lawyer stated that he had explained these things to his client, and that he'd "reviewed the amended information with [Alexander] as well as th[e] statement of defendant in support of a guilty plea." The majority correctly notes that the amended information did not include the sub-elements of sexual battery; but Alexander's statement in support of his guilty plea did indicate that he had "committed the offense of sexual battery on [the victim]." Although it could be inferred that counsel did not discuss anything more than the bare bones of the charges his client would be pleading guilty to, that inference is hardly inevitable. The district court could also infer that defense counsel explained everything

## II

¶ 71 I agree with the majority's affirmance of the court of appeals' refusal to conduct a harmless error review in this case, but would base the decision on somewhat different grounds. The text of rule 11(*l*) states that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." UTAH R.CRIM. P. 11(*l*). In context, the consideration of an effect on "substantial rights" is an unmistakable reference to traditional "harmless error" review, which asks whether an intermediate error in the proceedings below has a prejudicial effect on the ultimate judgment. The "substantial rights" formulation appears in both our federal and state rules of criminal procedure,[6] and has long been associated with harmless error.[7] Given the settled meaning of the text of the rule, we are in no position to override it with an assurance as to our true "intent" in adopting the rule, *supra* ¶ 44.

¶ 72 We have procedures in place for amending the language of rules we deem ill-advised or· unwieldy. Unless and until we alter the text we have previously adopted, lawyers and litigants ought to be able to rely on the settled understanding of the words employed in our rules. Where our rules incorporate legal terms of art, those terms should ·be deemed to convey their settled meaning and should not be displaced by our subsequent "clarification" of what we really meant.

¶ 73 I would accordingly read rule 11(*l*) to mean what it says, which is to instruct courts to disregard "[a]ny variance from the procedures required by this rule which does not affect substantial rights," UTAH R.CRIM. P. 11(*l*), in the traditional sense that harmless, non-prejudicial violations of rule 11 do not justify setting aside a judgment. That is not to say that I would find error in the court of appeals' refusal to engage in harmless error review in this case. As the majority properly concludes, this case is not about a mere "variance from the procedures required by" rule 11, as such a variance is not enough to sustain a motion to withdraw a guilty plea. Instead, the question in this case is a statutory one—whether Alexander's plea was knowingly and voluntarily entered. That statutory question in no way implicates the rule 11(*l*) standard, which deals only with "variance[s] from the procedures required by th[e] rule."

¶ 74 Harmless error review is thus inapplicable here under the text of rule 11(*l*). I would affirm the court of appeals' treatment of this issue on that basis, without relying on a construction of rule 11 that limits the reach of its plain language.

of legal consequence to his client—including the definition and elements of a sexual battery.

The majority dismisses the significance of this dialogue, concluding that "[b]ecause defense counsel did not affirm on the record that he had explained the element of 'intent to commit sexual battery' to Mr. Alexander, the court cannot assume that Mr. Alexander understood this critical element." *Supra* ¶ 33. But the inverse of this statement is also true: The court cannot assume that Alexander did *not* understand the element of sexual battery after discussing it with his attorney. In light of the reliance a court may have on defense counsel's assurances under *Bradshaw*, the court could infer that Alexander's counsel fully explained to his client what it meant to have committed sexual battery, including the elements of that underlying criminal behavior. In any event, we ought not to assume the answer to this crucial question, which has never been litigated and at a minimum ought to be resolved on remand.

6. *See* FED.R.CRIM P. 11(h) ("Harmless Error. A variance from the requirements of this rule is harmless error if it does not affect *substantial rights*." (emphasis added)); *id.* 52(a) ("Harmless Error. Any error, defect, irregularity, or variance that does not affect *substantial rights* must be disregarded." (emphasis added)); UTAH R. CRIM P. 30(a) ("Any error, defect, irregularity or variance which does not affect the *substantial rights* of a party shall be disregarded." (emphasis added)).

7. Harry T. Edwards, *To Err Is Human, but Not Always Harmless: When Should Legal Error Be Tolerated?*, 70 N.Y.U. L. REV. 1167, 1174 (1995) (stating that harmless error in the federal system "traces its lineage to ... the former Judicial Code, which in 1919 for the first time directed appellate courts reviewing trial proceedings to ignore 'technical errors, defects, or exceptions which do not affect the *substantial rights* of the parties.' " (emphasis added) (footnote omitted)).