**2015 UT App 92**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
RICHIE CHARLES HARVEY,
Defendant and Appellant.

Memorandum Decision
No. 20130466-CA
Filed April 16, 2015

Fourth District Court, American Fork Department
The Honorable Christine S. Johnson
No. 101100836

Jennifer Gowans Vandenberg, Attorney
for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and MICHELE M. CHRISTIANSEN
concurred.

ROTH, Judge:

¶1      Defendant Richie Charles Harvey appeals from the
district court's denial of his motion to withdraw his plea of no
contest to aggravated assault, a third degree felony. Harvey first
argues that the district court abused its discretion in determining
that his plea was made knowingly and voluntarily. Second, he
challenges the court's denial of his motion on the grounds of
plain error and ineffective assistance of counsel. We affirm.

## I. Harvey's Plea Was Knowing and Voluntary.

¶2      Harvey contends that his misunderstanding about his own criminal history renders his plea unknowing and involuntary. This case began when Harvey allegedly sexually assaulted a woman in 2010 and was subsequently charged with forcible sexual abuse, a second degree felony, and unlawful detention, a class B misdemeanor. After negotiations between the State and Harvey's counsel, the State agreed to drop the unlawful detention charge and convert the forcible sexual abuse charge to third degree aggravated assault if Harvey would plead no contest. Prior to the entry of Harvey's plea, defense counsel showed Harvey the matrix that Adult Probation and Parole (AP&P) employs as part of its process of developing recommendations to assist district courts in determining appropriate sentences for offenders. Counsel emphasized to Harvey that it was very important for him to tell her about "any conviction anywhere," including convictions outside of Utah, so that she could give him the most accurate estimate possible of "what was likely to happen at sentencing" if he accepted the plea offer. Harvey identified a number of prior misdemeanor convictions but told counsel he had never been convicted of a felony. Based on this information, counsel advised Harvey that it was likely he "would do some jail time" but that a prison sentence was unlikely. However, she also told Harvey that there was a potential for a maximum sentence of zero to five years in prison and that she could make "no guarantees" about what Harvey's actual sentence would be.

¶3      Harvey accepted the State's offer and entered a no-contest plea to the third degree felony. Just before entering his plea, he signed a plea affidavit informing him, among other things, of the maximum sentence for the charge. The district court also conducted a plea colloquy and determined that Harvey had entered the plea knowingly and voluntarily. AP&P prepared a presentence investigation report (PSI) in anticipation of the sentencing hearing. As part of the PSI, AP&P calculated a

criminal history assessment score for Harvey, which it then incorporated into the Utah Sentencing Commission's general matrix (the Sentencing Matrix). The Sentencing Matrix "compare[s] a defendant's 'criminal history assessment' score with the degree of the offense of which he ha[s] been convicted." *State v. Egbert*, 748 P.2d 558, 561–62 (Utah 1987). The Sentencing Matrix "creates a starting point" for sentencing judges by "reflect[ing] a recommendation for a typical case," but judges are not bound by the recommendations and are to take both "aggravating and mitigating circumstances" into account, along with other pertinent considerations, when making sentencing decisions. *See* Utah Sentencing Commission, 2014 Adult Sentencing and Release Guidelines 1, *available at* http://www.sentencing.utah.gov. The Sentencing Matrix itself includes the following statement at the top: "These are guidelines only. They do not create any right or expectation on behalf of the offender." Harvey received a criminal history assessment score of nine points in the PSI, which placed him in criminal history category III. When viewed in conjunction with the third degree felony to which Harvey had pleaded no contest, Harvey's category III score produced a recommendation of "[i]ntermediate [s]anctions" on the Sentencing Matrix—i.e., jail time and probation rather than imprisonment. AP&P recommended, however, that the district court "make an[] upward departure from the sentencing guideline and sentence [Harvey] to prison." AP&P based its prison recommendation on Harvey's extensive arrest record and the violent nature of his crimes, his continued blaming of the victim in this case, his minimization of his prior criminal history, and the agency's concerns for public safety.

¶4 At sentencing, Harvey's counsel requested a continuance so AP&P could correct errors counsel identified in the PSI. The motion was granted, and AP&P prepared an amended report. The corrections to the amended report reduced Harvey's criminal history score from nine points to eight, but the reduction did not move him into a different category on the

criminal history scale and, accordingly, did not change the recommendation indicated by the Sentencing Matrix. And just as it had in the first PSI, AP&P recommended that the district court "make an[] upward departure from the sentencing guideline and sentence [Harvey] to prison" because of the various aggravating circumstances it had previously articulated.

¶5      Harvey obtained new counsel and filed a motion to withdraw his plea, contending that his plea was not knowing and voluntary because "he was under the impression that he would receive probation for his sentence" and he had been told by his prior counsel he would not go to prison. He filed a separate motion requesting that AP&P further review his criminal history and again amend the PSI. He argued, among other things, that one of the points allocated to him on the Sentencing Matrix was due to an out-of-state felony conviction he was "adamant" never occurred because he had "never spent a night in prison in any state, nor has he ever been put on parole." If the felony were removed, Harvey's score would be reduced to seven points, placing him in category II with a recommendation of "[r]egular [p]robation" on the Sentencing Matrix. The district court denied Harvey's motion to withdraw his plea, stating,

> It is clear from the record that Mr. Harvey was advised of the potential plea, the potential sentence. I told him myself on the record and he submitted a written statement in advance of pleading guilty that also indicates that he was advised of the potential sentence. So the idea that now he can suggest that if he had known there was any possibility of prison, he would not have entered his no-contest plea to me seems rather disingenuous.

The district court, however, granted Harvey's request for further clarification of the PSI.

¶6     Over the next year and a half, Harvey failed to appear for scheduled hearings, including a subsequent sentencing hearing, and warrants were issued for his arrest. In the meantime, AP&P produced a second amended PSI confirming, based on additional research, that Harvey did indeed have a felony conviction in Delaware. Harvey was eventually arrested for another assault and brought before the district court for sentencing. He continued to assert that the Delaware conviction was not a felony and asked the district court to sentence him to probation with credit for jail time already served. The district court, however, found that Harvey was not a good candidate for probation given the "horrendous" nature of the crime he had committed as well as his prolonged failure to appear for sentencing and his ongoing history of violent crimes. Instead, the court sentenced him to zero to five years in prison as AP&P and the State had recommended.[1]

¶7     "A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2012) (the Plea Withdrawal Statute). A plea is

_____

1. The court stated,

> This was . . . reduced to a third-degree felony to a level of offense where I might have been willing to consider probation, but based upon [your] conduct thereafter, I just don't believe that you're a candidate for probation, Mr. Harvey. You've been a fugitive for a year and a half which tells me you are not supervise-able. I can't trust you on probation if I can't trust you to even show up to court when you're supposed to be here.
>
> Therefore, I will adopt the recommendation of AP&P and impose zero to five in the State prison to commence forthwith.

knowing and voluntary "only if the defendant is 'fully aware of the direct consequences' of his plea." *State v. Trotter*, 2014 UT 17, ¶ 9, 330 P.3d 1267 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). "A direct consequence is one that will have a definite, immediate and largely automatic effect on the range of the defendant's punishment such as lack of eligibility for parole." *Id.* (citation and internal quotation marks omitted). Both defense counsel and the district court have a responsibility to "ensure a defendant is aware of the direct consequences of his or her plea." *Id.* Harvey argues that "he did not understand his criminal history and thus how it would impact the [Sentencing] [M]atrix." He contends that, as a result, his plea was not knowing and voluntary because he was not fully aware of its consequences. We conclude, however, that Harvey was appropriately made aware of the direct consequences of his plea.

¶8      "We review a trial court's denial of a motion to withdraw a guilty plea under an abuse of discretion standard, incorporating the clearly erroneous standard for the trial court's findings of fact made in conjunction with that decision." *State v. Lehi*, 2003 UT App 212, ¶ 7, 73 P.3d 985 (citation and internal quotation marks omitted); *see also State v. Knowlden*, 2013 UT App 63, ¶¶ 1–2, 298 P.3d 691 (per curiam) (applying the same standard to a motion to withdraw a no-contest plea). We conclude that the district court did not abuse its discretion in refusing Harvey's request to withdraw his plea. There is ample record support for the district court's findings that both counsel and the district court made efforts to ensure that Harvey was "fully aware of the direct consequences of his plea." *See Trotter*, 2014 UT 17, ¶ 9 (citation and internal quotation marks omitted). While counsel predicted that Harvey's plea would likely result in a jail sentence, she explained to Harvey that a prison sentence was a possible consequence and that there were "no guarantees" when it came to sentencing. The district court also conducted a plea colloquy before accepting Harvey's plea in which it specifically asked Harvey whether he was aware that prison was a possibility, to which he answered, "Yes, your Honor."

Additionally, Harvey signed a plea affidavit that clearly identified the maximum sentence for the crime to which he was pleading as zero-to-five years in prison. Given the record before us, we determine that the district court did not err in determining that Harvey's plea was entered knowingly and voluntarily because he was aware of the potential consequences of his plea.

¶9     Harvey argues, however, that accurate advice about a crime's potential maximum sentence is not sufficient to render a plea knowing and voluntary. He contends that his genuine belief he had never committed a felony is sufficient to show he "lacked a full understanding of the direct consequences of his plea" at the time it was entered and asserts that "had he understood his offender score would include a prior felony conviction, it is likely that he would not have pled [no contest]." We note first that AP&P's recommendation of prison was not a result of Harvey's offender score on the Sentencing Matrix, as his score, with or without the felony, would not have produced a recommendation on the matrix for prison. Rather, it was AP&P's concern over Harvey's continued blaming of the victim, his violent history, and his prolific arrest record that motivated its recommendation of a prison sentence. And the judge based her sentencing decision on similar factors as well as Harvey's conduct during the course of the proceedings. Thus, the Delaware felony conviction appears to have had relatively little impact on Harvey's sentence and therefore was not the kind of information that falls within the scope of a "direct consequence" of his plea, i.e., something that would have "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *See id.* (citation and internal quotation marks omitted).

¶10 More importantly, however, Harvey has failed to convince us that a defendant's misunderstanding of or disagreement as to his own criminal history is sufficient to render his plea involuntary when he has been correctly informed

of its potential consequences. Harvey cites *State v. Robinson*, 263 P.3d 1233 (Wash. 2011) (en banc), and *People v. Chippewa*, 751 P.2d 607 (Colo. 1988) (en banc), as support for his contention that a defendant's plea is not knowing and voluntary, even when the defendant is aware of the potential maximum sentence, if it is based on a mistaken belief held by defendant about the potential for a sentence less than the maximum. We conclude that these cases are distinguishable from the circumstances here.

¶11 In *Robinson*, when the defendant pleaded guilty, he was not made aware of changes to Washington law that allowed a defendant's juvenile criminal record to be included in the calculation of his criminal history score when sentenced for a crime he committed as an adult. 263 P.3d at 1234. The *Robinson* court determined the defendant's mistaken belief that his juvenile record would not be considered was a "legal mistake," not a factual one, because his misunderstanding turned on his mistaken views of the applicable law and not on any misunderstanding of the facts of his criminal history. *Id.* at 1236–38 (citation and internal quotation marks omitted). However, the court reiterated that defendants "contractually assume[] the risk that additional criminal history [will] be found." *Id.* at 1237. Here, Harvey's misunderstanding was a factual rather than a legal one, as he had been correctly advised of the potential legal consequences of his plea and it was his own misunderstanding of his criminal history that led to his belief about how he would be sentenced. Neither does *Chippewa* support Harvey's position, as the court there did not reach the question of whether the defendant's plea was entered knowingly and voluntarily, but instead considered only whether the defendant had provided a "fair and just reason" for withdrawing his plea—a standard that no longer applies in Utah. 751 P.2d at 607, 610–11; *see also State v. Ruiz*, 2012 UT 29, ¶¶ 29–30, 282 P.3d 998 (explaining that under a former version of Utah's Plea Withdrawal Statute, a defendant had to show "good cause" by demonstrating a "fair and just reason" for granting a withdrawal, but that under the amended version, a defendant must show "the plea was not knowingly

and voluntarily entered" (citation and internal quotation marks omitted)).

¶12 We therefore conclude that Harvey's own misunderstanding of his criminal history did not render his plea involuntary and unknowing because he was informed of the potential sentencing consequences of his plea—whatever his criminal history might reveal. In other words, Harvey was advised by his counsel, his plea affidavit, and the judge that the maximum punishment he could receive (other than a fine) was a sentence of zero-to-five years in prison. Harvey has not persuaded us that Utah law requires more. *See*, *e.g.*, *State v. Candland*, 2013 UT 55, ¶ 13, 309 P.3d 230 (holding that a defendant must have knowledge "of the likely consequences of entering the guilty plea" in order for a plea to be voluntary and knowing); *State v. Alexander*, 2012 UT 27, ¶ 23, 279 P.3d 371 ("To show that a plea was not knowing and voluntary, a defendant must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." (citation and internal quotation marks omitted)).[2]

---

2. It is worth noting that many federal courts have also concluded that a defendant's inaccurate sentencing expectations do not render a plea constitutionally defective. *See*, *e.g.*, *United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010) (holding that an inaccurate sentencing estimate did not render a plea unknowing, unintelligent, or involuntary because the defendant was informed of the statutory maximum); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008) (holding an attorney's mistaken prediction about a possible sentence does not render a defendant's plea unknowing and involuntary); *United States v. Pease*, 240 F.3d 938, 940–42 (11th Cir. 2001) (per curiam) (holding that a defense attorney's failure to uncover a defendant's prior

(continued...)

Accordingly, we conclude the district court did not abuse its discretion in denying Harvey's motion to withdraw his plea.

## II. Harvey's Claims of Plain Error and Ineffective Assistance of Counsel Also Fail.

¶13 Harvey next contends that the district court erred when it failed to allow him to withdraw his plea on the basis of his "ongoing hostile relationship with his attorney" and his own "marginal competency." Harvey did not raise these claims in the district court, and therefore they are not preserved. Accordingly, he raises them on appeal claiming plain error and ineffective assistance of counsel. *See State v. Williams*, 2013 UT App 101, ¶ 2, 300 P.3d 788 (observing that claims of plain error and ineffective assistance of counsel are exceptions to the preservation rule). Plain error requires a defendant to show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Lee*, 2006 UT 5, ¶ 26, 128 P.3d 1179 (citation and internal quotation marks omitted). To show that counsel was constitutionally ineffective, a defendant must show "(1) that counsel's performance was objectively deficient, and (2)

---

(…continued)
felony convictions and the attorney's inaccurate sentencing prediction did not render the defendant's plea unknowing and involuntary because the defendant "knew at the time he pleaded guilty [what] his sentence might be"); *United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994) ("[A]n erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." (citation and internal quotation marks omitted)); *United States v. Jones*, 905 F.2d 867, 868 (5th Cir. 1990) ("As long as the [defendant] understood the length of time he might possibly receive, he was fully aware of his plea's consequences." (alteration in original) (citation and internal quotation marks omitted)).

a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. We conclude that Harvey has failed to meet his burden under either standard.

¶14    During the course of proceedings in the district court, Harvey sent several letters to the judge complaining about his counsel's performance and requesting that new counsel be appointed. He alleged that counsel "would not investigate exculpatory evidence"; "refused to communicate with him"; "was hostile"; "refused to provide him with discovery and other materials"; and "refused to investigate a defense of voluntary intoxication." The court addressed Harvey's concerns at the preliminary hearing and determined that trial counsel was competent and that Harvey was adequately represented.

¶15    Harvey claims that the district court should have granted his motion to withdraw his plea on the basis of his hostile relationship with his defense counsel. He also argues that the attorney who replaced his original counsel was ineffective for failing to raise his hostile relationship with his original counsel as a basis for withdrawing his plea. But a hostile relationship with one's attorney is not necessarily a proper basis on which a district court can grant a motion to withdraw a plea. The Plea Withdrawal Statute clearly states, "A plea of guilty or no contest may be withdrawn *only* upon . . . a showing that it was not knowingly and voluntarily made." Utah Code Ann. § 77-13-6(2)(a) (LexisNexis 2012) (emphasis added). Thus, the hostile relationship between Harvey and his counsel would be a sufficient basis for withdrawal of his plea only if that relationship rendered his plea unknowing and involuntary. Here, the district court determined at the preliminary hearing that Harvey was adequately represented by competent counsel, a finding that Harvey has not challenged on appeal. And while the record demonstrates Harvey's frustration with his counsel throughout the proceedings, nothing suggests to us that the relationship interfered with counsel's fulfillment of her

obligation to inform Harvey of the consequences of his plea or with Harvey's understanding of those consequences. As a result, we are not persuaded that it should have been obvious to the district court at any point in the proceedings that Harvey's relationship with his counsel required that he be allowed to withdraw his plea. For the same reason, Harvey cannot show that replacement counsel was ineffective for failing to make such a motion. Accordingly, Harvey's claims of plain error and ineffective assistance of counsel related to his relationship with counsel fail.

¶16    Harvey's competency was also addressed in the district court. The State requested a competency evaluation based on Harvey's "erratic and inappropriate behavior in the courtroom." The district court granted the motion. A psychiatrist concluded that Harvey suffered from a "delusional disorder of the persecutory type," as evidenced by Harvey's belief that he was being pursued by FBI agents and police officers after purportedly filing a lawsuit against law enforcement many years prior. Harvey also claimed that the woman he had assaulted in this case was an FBI informant hired to fabricate allegations against him. The psychiatrist determined that Harvey's delusions "severely limited" his ability to participate in his own defense. A second psychiatrist, however, determined that while Harvey "shows character traits suggestive of a personality disorder," Harvey did not suffer from a mental illness and was competent to assist counsel in his defense. Harvey was then examined by a third psychiatrist who also concluded that Harvey "does not meet the diagnostic criteria for a mental disorder" and was competent to stand trial. The district court determined that Harvey was legally competent, and the proceedings moved forward. Harvey argues that the district court committed plain error in failing to grant his motion to withdraw his plea because of Harvey's "marginal competency" and that his counsel provided ineffective assistance in failing to move to withdraw his plea on the same ground.

¶17 "The same standard applies to both a determination of competency to plead guilty and a determination of competency to stand trial." *State v. Arguelles*, 2003 UT 1, ¶ 50 n.11, 63 P.3d 731. The district court's determination that Harvey was competent to stand trial was therefore also a determination that Harvey was competent to plead no contest. *See id.* Harvey argues that a finding of incompetency by one of the psychiatrists was sufficient reason for the district court to grant his motion to withdraw his plea. But Harvey has not challenged the district court's ultimate finding that he was competent to stand trial based on the court's consideration of the opinions of all three psychiatrists. In light of the district court's unchallenged and supported determination that Harvey was competent to stand trial (and therefore competent to plead), Harvey cannot argue that the court committed obvious error in failing to sua sponte permit him to withdraw his plea on the basis of his "marginal competence." Nor can he claim that counsel was ineffective for failing to argue Harvey's marginal competency as a reason for withdrawing the plea. Harvey's claims related to his competency therefore fail.

¶18 We affirm.

––––––––––