2023 UT App 26

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CODY ALEXANDER YOUNG,
Appellant.

Opinion
No. 20210540-CA
Filed March 23, 2023

Fourth District Court, Provo Department
The Honorable Robert C. Lunnen
No. 191401048

Emily Adams and Freyja Johnson,
Attorneys for Appellant

David O. Leavitt and Tye Lane Christensen,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

HARRIS, Judge:

¶1     After pleading guilty to a misdemeanor drug charge, Cody Alexander Young sought to withdraw his plea, asserting that it was not knowingly made. The district court denied Young's motion, and Young appeals, asserting that, when he entered his plea, he did not fully understand that he had a possibly meritorious suppression defense. We affirm the district court's denial of Young's motion because Young has failed to carry his burden of demonstrating that, under the circumstances, his plea was not knowingly and voluntarily entered.

BACKGROUND

¶2      In November 2018, Young was convicted—in an unrelated case in Juab County (the Juab County Case)—of misdemeanor drug and weapons charges and was placed on probation. Among other conditions of probation, Young was required to inform Adult Probation and Parole (AP&P) of his "current address at all times," and was required to make himself "available to [AP&P] and the court when requested to do so" but in any case at least monthly. Young was also "ordered to comply with GPS/ankle monitoring." In addition, the court ordered Young to "enter into an agreement with" AP&P but, for reasons unclear from the record, AP&P never created a probation agreement for Young to sign, and therefore Young never signed one. The agreement AP&P typically has probationers sign includes a provision in which they consent to allow AP&P to search their residences upon request. But because Young was never asked to sign any such agreement, the parties agree that Young provided no such blanket consent to AP&P for searches of his residence.

¶3      In December 2018 and January 2019, Young reported as required to his probation agent (Agent), but he missed his appointments the following two months—February and March 2019—and was therefore "considered to have absconded." Agent also learned, during this same time period, that the battery in Young's ankle monitor was dead. In an effort to locate Young, Agent visited Young's last known address, but Young was not there. In early April, Young notified Agent by electronic message that he was staying in a camp trailer on or near national forest land, but he failed to send Agent specific information about where the trailer was located.

¶4      The next day, Agent—with the assistance of a local deputy sheriff—went looking for Young and located a trailer he believed to be the one to which Young had been referring. Agent decided to conduct a "knock and talk"; Young's girlfriend (Girlfriend)

answered the door, stepped outside, and confirmed that Young was in the trailer. Agent then entered the trailer with his gun drawn and at the "low ready" position, and located Young in the bedroom, where Agent also saw—in "plain view"—a glass pipe that he believed was drug paraphernalia. After Agent administered a *Miranda*[1] warning, Young initially indicated that he did not want to speak with Agent. Agent then informed Young that he would be required, in light of his status as a probationer, to submit to a drug test; Young then said that he wanted to talk to Agent, and he proceeded to admit to using both marijuana and methamphetamine within the last ten days.

¶5    A search of the trailer turned up "a large white crystal substance" that field-tested positive for methamphetamine, as well as various items of drug paraphernalia (in addition to the glass pipe). And Young's eventual urine test was positive for both marijuana and methamphetamine. Agent arrested Young at the trailer and took him into custody. A few days later, the State charged Young with possession or use of methamphetamine (a class A misdemeanor) and possession of drug paraphernalia (a class B misdemeanor).

¶6    At his first appearance before the court, Young was appointed counsel. A week later, at his first hearing accompanied by counsel, Young agreed to plead guilty to the drug possession charge, in exchange for the State dismissing the paraphernalia charge and agreeing to his release from custody in this case. At that hearing, Young signed a statement in support of his guilty plea; in that document, Young stated that he "did knowingly possess a schedule II controlled substance, meth," and that he was "entering these pleas voluntarily." He also acknowledged that, by pleading guilty, he was giving up various constitutional rights,

---

1. *Miranda v. Arizona*, 384 U.S. 436 (1966).

and that he and his attorney had "fully discussed this statement, [his] rights, and the consequences of" the plea.

¶7     During the plea hearing, the district court conducted a robust colloquy with Young. Young acknowledged that he had read and understood the plea statement document; that he understood the charge to which he was pleading guilty and the potential sentence that could be imposed; that he understood that he was "waiving certain constitutional rights" by pleading guilty; and that the conviction resulting from the plea would function as both an enhancement to any future drug charges as well as an admission of a violation of his probation in the Juab County Case. Young also acknowledged that he was thinking clearly and was entering into the plea agreement voluntarily, and that he was satisfied with the representation provided to him by his attorney. Young also accepted the factual basis provided by the State for the charge, and acknowledged that he was pleading guilty because he was guilty, and not for any other reason. After accepting Young's plea, the court ordered that the paraphernalia count be dismissed and that Young be released from custody in this case.

¶8     At a scheduled sentencing hearing several weeks later, Young indicated that he wanted to file a motion to withdraw his guilty plea, and requested that his sentencing be postponed and that he be appointed conflict counsel. The court granted both of these requests. For reasons not entirely clear from the record, it took Young some eighteen months to file a written motion to withdraw his plea. When finally filed, the motion asserted that the search of the trailer had been "illegal" and that Young's plea was not knowingly entered "because he had not signed [any] [p]robation [a]greement" in the Juab County Case and "was never advised of the terms of his [p]robation in that case." The motion was relatively brief—containing only three paragraphs of legal argument—and came unaccompanied by any affidavits, declarations, or other attachments.

¶9    The court held an evidentiary hearing on the motion. At the hearing, the State called Agent as a witness, and Young's attorney briefly cross-examined Agent, eliciting an admission that Young had never signed a probation agreement. But Agent was the only witness to testify at the hearing; Young did not take the stand and he called no other witnesses, nor did he offer any documentary evidence. At the conclusion of the hearing, Young's new attorney argued that, because Young had not signed a probation agreement, the search of the trailer was illegal, and that Young had not fully comprehended the potential illegality of the search at the time he entered his plea; on that basis, counsel asserted that Young's plea had not been knowing. The court then set a briefing schedule on the motion, ordering Young to file any post-hearing brief within ten days, and the State to respond thereafter. A few weeks later, the State filed a brief in opposition to Young's motion, but Young filed neither a post-trial brief of his own nor any reply to the State's opposition.

¶10    After considering the briefing and the evidence presented, the district court denied Young's motion in an oral ruling. Focusing first on the plea hearing itself, the court noted that Young was not asserting that there had been any infirmities in the plea colloquy or the plea hearing. The court found unpersuasive Young's argument that he was "not technically on probation," noting that Young "was on an ankle monitor" and knew that "he was required to report to AP&P." And as for Young's argument that the search of the trailer had been illegal, the court indicated that it would have denied any motion to suppress on that issue because Young "was on the ankle monitor" and AP&P "could have arrested him or searched him at any time." After denying the motion to withdraw, the court later sentenced Young to a suspended jail sentence and twenty-four months of probation on the misdemeanor count to which he had pled guilty.

ISSUE AND STANDARD OF REVIEW

¶11    Young now appeals the district court's denial of his motion to withdraw his guilty plea. We "reverse a district court's ruling on a motion to withdraw a guilty plea only when we are convinced that the court has abused its discretion," *State v. Ciccolelli*, 2019 UT App 102, ¶ 9, 445 P.3d 528 (quotation simplified), "incorporating the clearly erroneous standard for the trial court's findings of fact made in conjunction with that decision," *State v. Harvey*, 2015 UT App 92, ¶ 8, 348 P.3d 1199 (quotation simplified), *cert. denied*, 362 P.3d 1255 (Utah 2015).

ANALYSIS

¶12    Under Utah law, any attempt to withdraw a guilty plea "is governed by statute." *State v. Alexander*, 2012 UT 27, ¶ 19, 279 P.3d 371. The relevant statute provides that a guilty plea "may be withdrawn only upon leave of the court and a showing that [the plea] was not knowingly and voluntarily made." Utah Code § 77-13-6(2)(a). In this context, the defendant bears the burden of demonstrating that the plea was not knowingly and voluntarily made. *See State v. Ruiz*, 2012 UT 29, ¶ 37, 282 P.3d 998 (holding that "on a presentence motion to withdraw, the burden of proof is on the defendant, who must show that his or her plea was not knowingly and voluntarily made"). For the reasons that follow, we conclude that Young has not carried his burden in this case because he failed to supply the district court with evidence regarding his state of mind when he entered his plea.

¶13    "To show that a plea was not knowing and voluntary, a defendant must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Alexander*, 2012 UT 27, ¶ 23 (quotation simplified). When a court evaluates a defendant's motion to withdraw a plea, it must

consider the "totality of the circumstances," and should not focus exclusively on whether the plea colloquy complied with rule 11 of the Utah Rules of Criminal Procedure. *See State v. Magness*, 2017 UT App 130, ¶ 20, 402 P.3d 105 (stating that "[t]he district court's analysis was too narrowly focused" because it "look[ed] primarily at what was said at the plea hearing and whether the plea hearing complied with rule 11"). And when a defendant claims that the plea was not *knowingly* entered, the relevant inquiry—by definition—requires a court to assess the defendant's state of mind at the time the plea was entered. *See generally Alexander*, 2012 UT 27, ¶ 62 (Lee, J., concurring in part and dissenting in part) (stating that "[a]lthough the motion mouthed the words 'knowingly and voluntarily,'" the defendant "never raised the factual question of his state of mind in entering the guilty plea" but "simply rested on the legal theory that a rule 11 violation alone was sufficient to render his plea unknowing or involuntary"); *see also People v. Kyler*, 991 P.2d 810, 817 (Colo. 1999) ("To ensure that a plea represents the accused's free and reasoned decision, the Rule 11 court must, to some degree, assess the defendant's state of mind when he enters a guilty plea."); *State v. Callantine*, 2022 MT 221N, ¶ 11 (explaining that when considering the totality of the circumstances for a plea withdrawal, "[t]his searching inquiry necessarily includes consideration, *inter alia*, of the state of mind and subjective impressions of the accused at the time of the plea").

¶14　In this case, Young's sole contention is that his plea was not knowingly entered because, at the time he entered his plea, he was not aware that he had a potentially meritorious suppression motion that could have been filed. Whether unawareness of the possibility of filing (or of the potential strength of) such a motion constitutes a sufficient basis to declare a plea "unknowing" presents an interesting question that courts in other jurisdictions have answered in differing ways. *Compare United States v. Williams*, 48 F.4th 1, 7 (1st Cir. 2022) (rejecting a defendant's argument that "his plea was plainly not knowing because of his

failure to understand that he could not file a motion to suppress if he pled guilty"), *with United States v. McTiernan*, 546 F.3d 1160, 1168 (9th Cir. 2008) (holding that a defendant can succeed in a plea withdrawal setting by showing "that proper advice [from counsel] could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the grounds for suppression now advanced prior to pleading" (quotation simplified)). But we need not further concern ourselves with this question in the context of this case because even assuming—for purposes of the argument and without deciding—that unawareness or misapprehension of the strength of a potential suppression motion could render a plea unknowing in appropriate cases, Young's claim fails for a lack of proof. *See State v. Sharp*, 2021 UT App 90, ¶¶ 30–32, 498 P.3d 9 (declining to reach the merits of "an interesting question" in the plea withdrawal context—in that case, "[w]hether post-plea, pre-sentence evidence demonstrating a defendant's innocence may render a plea unknowing or involuntary under the current plea withdrawal statute"—because the defendant "did not present to the court" sufficient evidence supporting his motion), *cert. denied*, 502 P.3d 270 (Utah 2021).

¶15 In particular, Young provided the court with no evidence regarding his state of mind at the time he entered his guilty plea. Particularly glaring is the absence of any affidavit, declaration, or testimony from Young himself indicating what he knew at the time of his plea about a potential suppression motion, and whether he would have pled guilty had he known more about such a motion. The act of pleading guilty—indeed, of settling any legal dispute—necessarily entails an assessment of risks and benefits, including the risk that one's opponent's case might worsen over time (through, for instance, evidentiary developments or motion practice). *See, e.g., In re Reise*, 192 P.3d 949, 955 (Wash. Ct. App. 2008) (stating that by pleading guilty, a defendant "assumes the risk that the State's potential trial evidence will weaken: a State witness might not attend trial,

might move away, might die; a new exculpatory witness might come forward; or new laboratory tests might be less conclusive"; noting that "[t]he passage of time always changes the quantity and quality of potential State's evidence"; and concluding that, "by pleading guilty, the defendant gives up the right to force the State to prove its case with the potential evidence" and therefore "a guilty plea thus generally bars a later collateral attack based on newly discovered evidence"). Indeed, it is not at all uncommon for defendants to plead guilty despite an existing potential for filing motions, including suppression motions, that might (if successful) result in dismissal or reduction of the pending charges. A defendant may rationally decide, even with full knowledge of the relative strength of potential motions, to enter a guilty plea anyway and forgo the opportunity to file motions; for instance, a defendant may believe that the terms of a particular offered plea agreement are especially favorable or, alternatively, may want to obtain a release from custody sooner rather than later. In short, the existence of a potential unfiled suppression motion at the time of a guilty plea does not, by itself, indicate that the plea was unknowing.

¶16     In order to succeed on a motion to withdraw a guilty plea on the basis that the plea was unknowing due to the defendant's unawareness (or misunderstanding) of a potential motion, defendants must point to evidence that they did not know about (or misunderstood) the potential motion, that they had not appropriately factored that motion into their calculus in deciding to plead guilty, and that—had they known more about the potential motion—they would not have entered into the plea agreement. Such evidence is often a necessary (although not necessarily a sufficient) condition for success on any such motion. A court could, of course, find that a defendant's evidentiary proffer in this regard is unpersuasive or not credible. But in the absence of such a proffer, a court may not have sufficient evidence upon which it could base a finding that a defendant's plea was not knowing at the time it was entered.

¶17    An example of how the process is supposed to work is provided in *State v. Magness*, 2017 UT App 130, 402 P.3d 105. In that case, the defendant sought withdrawal of his guilty plea on the basis that, at the time he entered his plea, he had relied on assurances from the prosecutor that the State would not recommend a prison sentence unless the victim specifically asked it to do so and that the victim "did not want the defendant to go to prison." *Id.* ¶¶ 3–7. In support of his plea withdrawal motion, the defendant submitted three affidavits—one from defense counsel, one from a private investigator, and one from the defendant himself—all attesting that the State had made the representations in question, that those representations had turned out to be false, and that the defendant had materially relied on those representations in making the decision to plead guilty. *Id.* ¶¶ 3–8. On appeal, we noted that "a defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case," *id.* ¶ 24 (quotation simplified), and that if the defendant had "simply miscalculated the likelihood that the victim would make a sentencing request for prison, a basis for withdrawing the guilty plea would likely not exist," *id.* ¶ 29. But because the defendant's "calculus" was based on erroneous representations made by the prosecutor, we held that the defendant's plea had not been "knowingly" entered. *Id.* ¶¶ 27–29.

¶18    In this case, by contrast, Young has provided no evidence regarding what his internal mental calculus was in deciding to plead guilty. He provided no affidavit, from himself or his defense counsel, indicating that he was unaware of (or otherwise misapprehended) the existence or strength of any potential suppression motion. The only evidence submitted by either side in connection with Young's motion to withdraw his plea was the testimony of Agent, who of course had nothing to say about Young's state of mind at the time he entered his plea. Agent did confirm that Young had not signed a probation agreement. But this fact sheds no light on what Young knew about suppression

possibilities at the time of his plea or, more significantly, on whether additional knowledge about such possibilities would have materially affected his decision to plead guilty.

¶19 On appeal, Young acknowledges the absence of evidence regarding his state of mind at the time he entered his plea. He contends, however, that the district court could have drawn favorable inferences about his state of mind from other circumstances, including the fact that he asked for discovery in the case and the fact that he pled guilty very early in the case, before discovery had been provided. But we see no error—let alone clear error—in the district court's decision not to draw any such inferences in Young's favor.[2] Certainly, other circumstances amply supported the opposite conclusion: the State agreed, as part of the plea agreement, to drop one of the two misdemeanor charges and release Young from custody in this case immediately. In addition, the district court noted that it did not think much of the merits of Young's unfiled suppression motion, stating that it would have denied the motion had it been filed. Given that it was Young's burden to demonstrate that his plea was not knowingly entered, in our view the district court made no error in determining that Young had not met that burden, especially in light of Young's failure to offer any direct evidence about what his plea calculus actually was. *See State v. Knowlden*, 2013 UT App 63, ¶ 5, 298 P.3d 691 (per curiam) (explaining that the defendant "fail[ed] to demonstrate that he did not understand the constitutional protections he was waiving or the factual basis for the charges against him" and therefore "failed to demonstrate that his pleas [were] not knowing").

---

2. "The question of [a defendant's] state of mind when entering [a] guilty plea is a classic question of fact." *State v. Alexander*, 2012 UT 27, ¶ 67, 279 P.3d 371 (Lee, J., concurring in part and dissenting in part). And as noted, in this context we review the district court's factual findings for clear error. *See supra* ¶ 11.

CONCLUSION

¶20  By failing to provide any evidence regarding his own subjective state of mind at the time he entered his guilty plea, Young failed to carry his burden of demonstrating that his plea was not knowingly entered. Accordingly, the district court did not abuse its discretion in denying Young's motion to withdraw.

¶21  Affirmed.

―――――――