2025 UT App 95

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DAKOTA ANTHONY DENTE,
Appellant.

Opinion
No. 20240688-CA
Filed June 26, 2025

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 211903226

Janet Lawrence, Attorney for Appellant

Derek E. Brown and Aubrey Bisbee,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

HARRIS, Judge:

¶1     Soon after pleading guilty to a felony sex crime, Dakota Anthony Dente sought to withdraw his plea, asserting that it had not been knowingly and voluntarily made. The district court denied Dente's motion, and Dente appeals, claiming that when he entered the plea, he had insufficient information regarding available defenses, that he was not advised of some of the consequences of sex-offender registration, and that his attorney had pressured him into accepting the State's plea offer. We affirm the district court's denial of Dente's motion because, under the circumstances presented here, Dente has failed to demonstrate that the court abused its discretion in determining that his plea was knowingly and voluntarily entered.

BACKGROUND[1]

¶2   In September 2020, Dente, Tonya, and Madison[2] went "to a friend's house to play games, drink wine, and get in the hot tub." At one point during the evening, Tonya briefly walked outside of the apartment, and when she returned, she saw Dente and Madison lying on a couch, with Dente on top of Madison. Both Dente and Madison had their pants off. Tonya left the room because she did "[n]ot want[] to see that," and she found another room where she could sleep. Later that evening, Tonya "woke up to someone taking off her swimsuit bottoms." She recalled that the person "licked her vagina, and then . . . put his penis into her vagina." Tonya said that the person eventually withdrew and rolled onto his back, and that when he did, she recognized the person as Dente. At that point, she "jumped out of bed and confronted" him, and in response, Dente said, "I thought you were [Madison]."

¶3   The State eventually charged Dente with two first-degree-felony counts of rape (one related to Madison and one related to Tonya) and one first-degree-felony count of forcible sodomy (related to Tonya). Later, about a week before trial, Dente accepted an offer from the State. Per the arrangement, Dente agreed to plead guilty to one third-degree-felony count of forcible sexual abuse in exchange for the dismissal of all other charges and the State's agreement not to recommend prison at sentencing.

---

1. "Because there was no preliminary hearing or trial in this case, we recite the facts related to the underlying criminal activity as alleged in the charging information and contained in [the written agreement] submitted to the court at the change-of-plea hearing." *State v. Badikyan*, 2018 UT App 168, ¶ 2 n.1, 436 P.3d 256, *aff'd*, 2020 UT 3, 459 P.3d 967.

2. Tonya and Madison are pseudonyms.

¶4    The district court held a hearing to consider Dente's change of plea, and during that hearing, Dente signed a written statement in support of the plea. In the statement, Dente admitted that he "touched the pubic area of [Tonya] and [Madison] with the intent to arouse [his] own sexual desire" and that he did so "[without] their consent." Dente also affirmed that he understood the potential penalties he faced—including up to five years in prison—and the rights he was giving up by pleading guilty, and he acknowledged that he was voluntarily entering his plea. During the hearing, the district court conducted a robust colloquy with Dente. In this colloquy, Dente stated, among other things, that he had read and understood the plea agreement document, that he understood he would be put on the sex-offender registry, and that he understood the "possible penalties for a third-degree felony." Dente also confirmed that the factual basis for his plea was correct. At the end of the colloquy, the court accepted Dente's plea and found that it had been "knowingly, intelligently, and voluntarily made."

¶5    A few weeks later, before he had been sentenced, Dente filed a motion to withdraw his plea through his newly obtained attorney (Counsel 4). The court held an evidentiary hearing on Dente's motion, and Dente testified. In his testimony, Dente explained that, during the course of the case, he had been represented by four different attorneys. He stated that his first attorney (Counsel 1) had investigated possible defense witnesses and had put together an investigation report, but Dente testified that he did not ever see the results of this report. Counsel 1 later had to withdraw, and a replacement attorney (Counsel 2) then took over. But Dente "didn't feel comfortable" with Counsel 2, so Dente hired another attorney (Counsel 3), who was Dente's counsel of record during the plea negotiations.

¶6    Dente offered his view that Counsel 3 had failed to advise him adequately in several key respects. First, Dente recalled discussing the complainants' allegations with Counsel 3, "but no

possible defenses." Dente also testified that when he asked Counsel 3 about Counsel 1's investigation report, Counsel 3 said he knew what was in the report but Counsel 3 "never . . . show[ed Dente] the evidence." Next, Dente testified that Counsel 3 told him he would be sentenced to probation, without any jail time. Dente acknowledged that Counsel 3 also told him that, as part of his sentence, he would be listed on the sex-offender registry for ten years, but he explained that Counsel 3 did not specifically advise him that being listed on the sex-offender registry would affect his ability to visit his son's school or daycare.

¶7     Sometime after Dente entered his plea, he realized that—due to his placement on the sex-offender registry—he would not be permitted to attend any of his son's school functions. He apparently also realized that he was not guaranteed to be afforded the privilege of probation. Dente then questioned Counsel 3 about those issues, and during that discussion, Dente learned that Counsel 3 didn't have a copy of Counsel 1's investigation report.

¶8     Dente testified that he then hired Counsel 4. Dente said that Counsel 4 obtained and reviewed a copy of Counsel 1's investigation report and advised Dente that the report referenced a video of Madison "dancing for [Dente] in an erotic manner" on the night of the hot-tub party. The report also referenced a witness who had apparently seen Dente and Madison having consensual sex that night. However, the video was not shown at the evidentiary hearing, nor did the witness testify at the hearing. Toward the end of his testimony, Dente acknowledged that the decision to plead guilty had been "[his] own" and had been made "with . . . the advice of" Counsel 3. But Dente maintained that he would not have entered the plea if he had known that Counsel 3 did not have a copy of the investigation report.

¶9     Dente's mother (Mother) and father (Father) also testified at the evidentiary hearing. Both Mother and Father stated that they sat in on conversations between Dente and Counsel 3, and

they offered their views that Counsel 3 had pressured Dente to take the State's plea offer. Father testified that Counsel 3 made statements like, "We have to take this position, it's too risky not to," and, "Just take the deal. You got a 50/50 chance. There's two women. If [there was only] one woman, maybe the chance, but two women, no way." Mother added that Counsel 3 told Dente, "You need to take this deal," and that Counsel 3 told the family to "[g]o home and think about it."

¶10    At the conclusion of the hearing, the district court made an oral ruling denying Dente's motion. The court found that Counsel 1 had investigated possible witnesses and had generated a report, but that the report had not been shared with Counsel 3 before Dente entered his plea. Even so, the court found that Counsel 3 "knew what was in the report" when he advised Dente to plead guilty. The court also expressed doubts about whether the erotic dance video would have been admissible at trial, as well as about the strength of that evidence even had it been admitted. The court further observed that, during the plea colloquy, it had warned Dente of the sex-offender-registration requirement and had told him that the court was not bound to follow the sentencing recommendation in the plea agreement.

¶11    As for the allegations of Counsel 3's pressure on Dente to accept the plea offer, the court recognized that Counsel 3 had "pitched" the plea offer "as a good deal" to Dente and his parents, and the court offered its own view that, "frankly, it was [a good deal]." The court reasoned that "[s]everal first-degree felonies" were reduced "down to one [third-degree felony] that include[d] both" complaining witnesses, and it observed that this was, "in fact, a significant reduction of the charges." The court also found that Dente and his family were "given some time to think about" the plea offer and that, during the plea colloquy, Dente confirmed that he had "talked to his attorney" and "felt like he understood what he was doing." Finally, the court found that Dente admitted he had "touched two girls and was guilty of that." For these

reasons, the court found that Dente's guilty plea had been "intelligently, knowingly, and voluntarily made."

¶12　After denying Dente's motion, the court scheduled a sentencing hearing. At that later hearing, the court sentenced Dente to an indeterminate prison term of up to five years, but it suspended that sentence and, instead, placed Dente on probation for forty-eight months and ordered him to serve ninety days in jail and comply with other conditions.

## ISSUE AND STANDARD OF REVIEW

¶13　Dente now appeals the district court's denial of his motion to withdraw his guilty plea. We "reverse a district court's ruling on a motion to withdraw a guilty plea only when we are convinced that the court has abused its discretion," *State v. Ciccolelli*, 2019 UT App 102, ¶ 9, 445 P.3d 528 (cleaned up), but we "incorporat[e] the clearly erroneous standard for the trial court's findings of fact made in conjunction with that decision," *State v. Harvey*, 2015 UT App 92, ¶ 8, 348 P.3d 1199 (cleaned up).

## ANALYSIS

¶14　Under Utah law, any attempt to withdraw a guilty plea "is governed by statute." *State v. Alexander*, 2012 UT 27, ¶ 19, 279 P.3d 371. The statute in question—known as the Plea Withdrawal Statute—provides that a defendant "may only withdraw a plea of guilty" if the defendant obtains "a leave of the court" and has made "a showing that the defendant did not knowingly or voluntarily make the plea." Utah Code § 77-13-6(2).[3] The burden

---

3. We set forth here the current version of the statute, which was amended—in ways not germane to this appeal—in 2025. Because the language of the applicable statute and the language of the

(continued…)

of demonstrating that a plea was not knowingly and voluntarily made falls upon the defendant attempting to withdraw the plea. *See State v. Ruiz*, 2012 UT 29, ¶ 37, 282 P.3d 998 ("[O]n a presentence motion to withdraw, the burden of proof is on the defendant, who must show that his or her plea was not knowingly and voluntarily made."). "To show that a plea was not knowing and voluntary, a defendant must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Alexander*, 2012 UT 27, ¶ 23 (cleaned up).

¶15   In this case, Dente offers three reasons why, in his view, his plea was not knowing and voluntary. First, he points to the fact that he had not seen a copy of Counsel 1's investigation report when he entered his plea, and he asserts that he therefore entered his plea "based on insufficient information" regarding possible defenses. Second, he points out that—although he was aware of the sex-offender-registration requirement—he was not advised of some of the specific consequences of sex-offender registration, and he asserts that this fact rendered his plea "unknowing." Finally, he claims that Counsel 3 pressured him into accepting the State's plea offer. We address each of these contentions in turn, and we find each of them unpersuasive.

## I. The Investigation Report

¶16   Dente first argues that his plea was not knowingly made because he did not have a copy of, and was not aware of at least some of the contents of, Counsel 1's investigation report prior to pleading guilty. Specifically, Dente argues that if he had known about the video of Madison's erotic dancing and about the

---

current statute are substantively identical for purposes of this appeal, we cite the current statute for convenience.

potential witness who purportedly saw him and Madison having consensual sex, he would not have entered a guilty plea on the terms offered.

¶17    As explained above, "to show that a plea was not knowing and voluntary, a defendant must show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Id.* (cleaned up). "To have a complete understanding of the charge, a defendant must possess an understanding of the law in relation to the facts." *State v. Sharp*, 2021 UT App 90, ¶ 27, 498 P.3d 9 (cleaned up). And "in determining whether a defendant understands the law in relation to the facts, courts review whether the defendant understood the critical or essential elements of the crime to which he pled guilty." *Id.* (cleaned up).

¶18    Here, Dente has not established that he lacked an understanding of the law in relation to the facts of his case when he pled guilty. On the contrary, Dente acknowledged in the written plea agreement that he understood that by pleading guilty he would be admitting that he committed the crime of third-degree-felony forcible sexual abuse. He acknowledged, in writing, the factual basis for the plea, namely, that he had "touched the pubic area of [Tonya] and [Madison] with the intent to arouse [his] own sexual desire" and that he did so "[without] their consent." And at the plea hearing, the court conducted a thorough colloquy with Dente. In this colloquy, Dente stated, among other things, that he had read and understood the plea agreement document and that the factual basis for his plea was correct. And even in his motion to withdraw his plea, Dente did not contend that he misunderstood the elements of the crime or that he misapprehended what the State would have had to prove, at trial, in order to convict him. *See id.* ¶ 28 (stating that the defendant had "not explained—either before the district court or

this court—how the [new evidence] specifically impacted his understanding of the critical or essential elements of the crime to which he pled guilty" (cleaned up)). Thus, Dente does not challenge the primary basis for the district court's decision to accept his plea as "knowing." *See State v. Knowlden*, 2013 UT App 63, ¶ 5, 298 P.3d 691 (per curiam) (explaining that the defendant "fail[ed] to demonstrate that he did not understand the constitutional protections he was waiving or the factual basis for the charges against him" and therefore "failed to demonstrate that his pleas [were] not knowing").

¶19    Instead, Dente asserts that his plea should be considered "unknowing" because, at the time he entered his plea, he was apparently unaware of some of the things discussed in Counsel 1's investigation report, including the dance video and the existence of a witness who claims to have seen him and Madison engaging in consensual sex at some point during the evening in question. We resolve this question in the same way we resolved a similar question in *Sharp*: by assuming—again, without deciding—that there may be circumstances in which evidence that was discovered post-plea but pre-sentence and that "demonstrates the defendant's innocence" could be significant enough to render a plea "unknowing," but by determining that, on this record, the appellant has not made the required showing. *See* 2021 UT App 90, ¶¶ 29–32.

¶20    Important here is the fact that, as in *Sharp*, the new evidence to which the defendant points was not put into the record at the plea withdrawal hearing. *See id.* ¶ 31 (stating that "when [the defendant] made his motion to withdraw his guilty plea, there was no such evidence before the district court" because all the defendant had done was make "a proffer that there *might* be evidence supporting [the defendant's] innocence" and because the State contested that proffer and "actively challenged the authenticity" of the evidence). Similarly here, Dente did not seek to admit the erotic dance video into evidence at the plea

withdrawal hearing, nor did he call the witness who apparently saw him and Madison engaging in consensual sex. Instead, Dente merely offered his own testimony that such evidence existed.

¶21 In making its ruling, the district court noted the difficulty presented by not having seen the video or heard from the new witness. The court raised the question of whether the video would even have been admissible at trial, and it lamented that it had at its disposal only "little facts about it other than there was apparently some information that the girls [were] doing some erotic dancing." The court stated that, based on the spare information it had, "whether or not [the video] would have been allowed [into evidence] is not entirely clear." And in any event, the court expressed doubt about the strength of the proffered evidence, stating that it "[didn't] know that that [evidence] in and of itself would counteract what happened here."[4]

¶22 The court also found that, while Counsel 3 might not have had a copy of Counsel 1's investigation report at the time of the plea negotiations, Counsel 3 "knew what was in the report" when he was advising Dente about his plea options. And the court also found that Dente discussed the plea offer with Counsel 3 prior to pleading guilty, and that Dente and his family "were given some time to think about" the State's offer. The court also noted that,

---

4. On this point, we share the district court's skepticism. Implicit in Dente's focus on the video is the notion that Madison's apparent choice to dance for him "in an erotic manner" at some point that evening indicates that she must have consented to whatever sexual contact followed later in the evening. It should go without saying that a person does not necessarily invite further sexual contact merely by engaging in an erotic dance. Such evidence is a far cry from, for instance, exculpatory DNA evidence or a complainant's recantation; while it may have some probative value, it falls far short of "demonstrating a defendant's innocence." *See State v. Sharp*, 2021 UT App 90, ¶ 31, 498 P.3d 9.

during the plea colloquy, Dente represented to the court that he had discussed the matter with Counsel 3 and "went over the information with him," and represented that "he understood what he was doing." And the court concluded its analysis by making a finding—for a second time—that Dente's plea had been "knowingly, intelligently, and voluntarily made."

¶23   As already noted, in this context we review the district court's factual findings for clear error and its ultimate conclusion for abuse of discretion. *See supra* ¶ 13. And we note that "'[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.'" *State v. Magness*, 2017 UT App 130, ¶ 24, 402 P.3d 105 (quoting *Brady v. United States*, 397 U.S. 742, 756–57 (1970)). Under the circumstances presented here, given the nature of the proffered evidence and the facts surrounding entry of the plea, Dente has not carried his burden of demonstrating that—as concerns the proffered evidence of which Dente was apparently unaware at the time he entered his plea—the district court committed clear error in its factual findings or abused its discretion in ultimately concluding that his plea was knowing.

## II.  The Sex-Offender Registry

¶24   Dente next argues that his plea was not knowing and voluntary because he was not advised of some of the consequences of being placed on the sex-offender registry. Specifically, Dente points out that sex-offender registration will restrict his ability to attend events at his son's school.

¶25   Our supreme court has held that the "knowing and voluntary" standard under the Plea Withdrawal Statute "incorporates the principle that a guilty plea may be voluntarily given even if the defendant is uninformed of the plea's collateral consequences." *State v. Trotter*, 2014 UT 17, ¶ 34, 330 P.3d 1267. In

Utah, the sex-offender-registration requirement is considered a collateral consequence. *Id.* ¶ 30.

¶26 In *Trotter*, our supreme court discussed the difference between direct and collateral consequences. *Id.* ¶¶ 28–30. The court explained that a "direct consequence has an immediate and automatic effect on the range of a defendant's punishments," such as the "forfeiture of trial rights, the imposition of a mandatory term of imprisonment that results from an unconditional guilty plea, and the imposition of mandatory postrelease supervision." *Id.* ¶ 28 (cleaned up).

¶27 A collateral consequence, by contrast, is "unrelated to the length and nature of the sentence imposed on the basis of the plea," "is based more on the individual's personal circumstances," and is "beyond the control and responsibility of the district court in which the conviction was entered." *Id.* ¶ 29 (cleaned up). Examples include the "loss of the right to vote or travel abroad, loss of civil service employment, loss of driver's license, loss of the right to possess firearms or an undesirable discharge from the armed services." *Id.* (cleaned up).

¶28 As relevant here, the *Trotter* court held that placement on a sex-offender registry is "properly characterized as a collateral consequence because . . . it is unrelated to the range of the defendant's punishments." *Id.* ¶ 30. The court reasoned that "[u]nlike parole, probation, or the length of imprisonment, the requirement to register as a sex offender is beyond the control of the trial court" and that the "judge has no discretion whatsoever in determining whether the defendant will have to comply with registration statutes; instead, it is a legal obligation, predetermined by the legislature, placed on those convicted of particular crimes and is an automatic operation of statute." *Id.* Thus, in *Trotter*, our supreme court held that the defendant's plea had not been entered "unknowingly" simply because the

defendant had not been informed that the plea would require registration on the sex-offender registry. *Id.* ¶¶ 34–35.

¶29    In this case, by contrast, Dente *was* informed that his guilty plea would require him to register as a sex offender. *See id*. ¶ 33 (noting that "attorneys follow best practices by advising their clients of the sex-offender-registration requirement when it is a condition of the client's guilty plea, even if doing so goes beyond the minimum standard mandated by the Constitution"). He just wasn't told about some of the secondary effects of that collateral consequence, such as the fact that his registration status would bar him from attending events at his son's school. But it follows from the fact that Dente did not need to be informed of the general sex-offender-registration requirement that Dente did not need to be informed of secondary effects of that requirement. If Dente's plea would have been "knowing" even if he had not been told about the registration requirement at all, his plea is therefore also "knowing" in this situation, where he knew of the general requirement but perhaps not some of the secondary effects.

¶30    On this basis, we reject Dente's contention that his plea was not knowing and voluntary simply because he did not fully comprehend some of the effects of sex-offender registration.

### III.  Counsel 3's Advice to Accept the Plea Offer

¶31    Finally, Dente argues that his guilty plea was not voluntary because he was unduly pressured by Counsel 3 to accept the State's plea offer.

¶32    A plea must be "the result of the defendant's voluntary and intelligent choice, not the result of improper threats or coercion." *State v. Candland*, 2013 UT 55, ¶ 13, 309 P.3d 230 (cleaned up). A plea is involuntary when a defendant does not enter it of his "own free choice." *Id.* ¶ 11. For example, a plea is involuntary if "induced by threats . . . [or] misrepresentation." *State v. Copeland*, 765 P.2d 1266, 1274 (Utah 1988) (cleaned up). But when the court

accepting the plea complies with the requirements of rule 11 of the Utah Rules of Criminal Procedure, that "create[s] a presumption [that] the plea was entered voluntarily." *See State v. Thorup*, 841 P.2d 746, 748 (Utah Ct. App. 1992).

¶33 In this case, Dente makes no allegation that the process by which the district court accepted his plea was in any way irregular. Dente had the advice of counsel, and he has not claimed that Counsel 3 provided constitutionally ineffective assistance. Dente was given time to consider the plea offer before accepting it, and he affirmed to the court that he was "entering this plea of [his] own free will and choice" and that "[n]o force, threats, or unlawful influence of any kind [had] been made to get [him] to plead guilty." At the plea hearing, the court engaged in a robust colloquy with Dente, during which Dente confirmed the factual basis for his guilty plea and that he read and understood the statement in support of his plea before signing it. Dente makes no assertion that the district court failed to comply with rule 11.

¶34 Rather than pointing to any irregularity in the procedure by which his plea was entered, Dente claims that Counsel 3 pressured him into taking the plea deal by making statements such as, "You need to take this deal"; "Just take the deal. You got a 50/50 chance. There's two women"; and "We have to take this position, it's too risky not to." But these statements do not rise to the level of threats or coercion, nor do they constitute a misrepresentation of the facts or law in this case. *See Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) (explaining that attempts by counsel to "persuade [a defendant] that it was in his best interest to plea does not lead to the conclusion that his . . . plea was involuntary"); *see also Threat*, Black's Law Dictionary (12th ed. 2024) (defining "threat" as a "communicated intent to inflict harm or loss on another or on another's property, especially one that might diminish a person's freedom to act voluntarily or with lawful consent"). On the contrary, Counsel 3's advice to take the plea offer was not unreasonable given that the initial charges

were three first-degree felonies involving two alleged victims and the plea offer included only one third-degree felony.

¶35    On these facts, we perceive no abuse of discretion in the district court's determination that Dente's guilty plea was voluntarily made.

## CONCLUSION

¶36    Dente has failed to carry his burden of demonstrating that the district court abused its discretion in determining that his plea was knowingly and voluntarily made. We therefore affirm the court's order denying Dente's motion to withdraw his plea.

————————